State of Missouri ex rel. Robbins v. The County Court of New Madrid.

———•———

THE STATE OF MISSOURI *ex rel.* JAMES K. ROBBINS, Respondent, *v.* THE COUNTY COURT OF NEW MADRID, Appellant.

1. *Swamp lands exempt from liability of county on ordinary indebtedness.*— The swamp lands donated to the State of Missouri, under the act of September 28, 1850, and donated to the several counties by that of March 27, 1868, are held for school purposes only (see act last named, § 8), and are exempt from any ordinary liability for county indebtedness.

State of Missouri ex rel. Robbins v. The County Court of New Madrid.

PER CURIAM. WAGNER, J., dissenting.

2. *Constitution, section 27, article IV—Construction of—General and special laws—Legislature, discretion vested in.*—The act "to authorize the County Courts of Madison, Wayne and other counties to levy a special tax for the purpose of paying the debts of said counties," is not in conflict with section 27, article IV, of the State constitution, which provides that "the general assembly shall pass no special law for any case for which provision can be made by general law." The question whether any given case can be provided for by a general law, or whether a special law is necessary, is a question solely for the Legislature to settle, and cannot be determined by the Supreme Court. (See State ex rel., etc., v. Boone County Court, 50 Mo. 317.)

### *Appeal from New Madrid Circuit Court.*

*L. Houck*, for appellant.

The act (see Sess. Acts 1868, p. 263) is unconstitutional. If section 27 of article IV of our constitution means anything, this act must fall. The words "the general assembly shall pass no special law for any case for which provision can be made by a general law, * * * for all cases where a general law can be made applicable," are clear and explicit. The act of 1868 relates to "particular localities," and because it applies to "certain specified" counties, is not "coextensive with the State," and its influence is not "felt in every county," according to the ruling of this court in The State *ex rel*. Dome *et al.* v. Wilcox, 45 Mo. 465, must be considered a special statute.

This court must know that a general law can be made applicable. (*Ex parte* Pritz, 9 Iowa, 33.) It is a proper subject of judicial inquiry. (Thomas v. The Board of Commissioners, 5 Porter, 4; Clark v. Irwin, 5 Nevada, 125; 33 N. Y. 447; Sedgw. Stat. and Const. Law, 62, 482–7.)

*W. B. Napton*, for respondent.

Section 27, article IV, of the constitution was not intended to exclude special enactments for municipal subdivisions of the State, having peculiar interests, or for localities needing legislation not required elsewhere. (State v. Squires, 26 Iowa, 340; Johnson v. R.R. Co., 23 Ill. 202; State v. Hitchcock, 1 Kan. 178; Gentile v. The State, 29 Ind. 409; Brooks v. Hyde, 37 Cal. 366;

State v. Parkman, 5 Nevada, 15; Clark v. Irvine, *id*. 125; State v. Ebal, 40 Mo. 190–91.) The circumstances existing in the counties named are not stated, and whether they existed elsewhere is not known. Respect for the Legislature requires us to presume that there were peculiarities in the financial condition of the counties named which did not exist in the other counties, and therefore such an act would either be inapplicable or improper for the whole State.

But apart from the act of 1868, it is not shown by the evidence that the taxation under the general law had been exhausted. The actual taxation for 1870 was only $3,716, whereas the value of the assessed taxable property of the county was $845.980. The order on the records for a levy of one per cent. was not executed, as one per cent. would be $8,459, nearly three times the actual taxation.

BLISS, Judge, delivered the opinion of the court.

The relator recovered judgment against the county of New Madrid for some $10,000, and sued out an alternative writ of *mandamus* showing the judgment, charging that he had applied to respondents to levy a tax to satisfy it, which they refused to do, and asking for a peremptory writ to compel them to provide by the necessary taxation for the means of satisfying the same. The answer set forth two reasons why the writ should not issue: 1st, that the county possessed a large amount of swamp lands, subject to sale upon execution, and therefore the relator had another remedy; 2d, that the County Court was only authorized by law to levy a tax for county purposes to the amount of one hundred per cent. over the amount of the State tax, and that before the service of the writ a levy had been made of that rate. That part of the answer embracing the first point was stricken out on motion, and to the other point the relator replied that by the act of March 13, 1868 (Sess. Acts 1868, p. 263), New Madrid and certain other counties were authorized to impose an additional tax for the purpose of paying their debts. A peremptory *mandamus* was awarded, and the respondents claim that the court committed error in striking out the first defense, and in holding

that they had the power to impose the tax authorized by the act of 1868. Upon the first point it is conceded that if the county has property subject to execution and sale upon the judgment, the present remedy should not be afforded, as it is one of those extraordinary ones only to be resorted to when others fail. Are, then, the swamp lands within the several counties subject to sale upon execution against the counties? The affirmative of this question is urged by counsel for the original respondents, for the reason that by the act of March 10, 1869 (Sess. Acts 1869, p. 66), a conveyance to the several counties of all the title and interest of the State in and to the swamp and overflowed lands was provided for. But this act does not specify the use for which the counties shall hold these lands, nor repeal any provision theretofore creating a use. It is perfectly consistent with any obligation that may have been or may be imposed upon the counties in regard to the disposition of the proceeds of the sale of these lands. It is true, if no disposition is provided for, they might belong to the general revenue and be used for any lawful purpose; and in that case they might or might not be directly liable to seizure for general debts of the county. Of this it is not necessary for us to speak, and for the reason that before the passage of the above mentioned act a specific use had been designated to which their proceeds should be devoted. The legislative intention in this matter is clear and unequivocal. The above act is not the one upon which the counties rely for title; it only specifies the mode of conveying the same. But the previous act of March 27, 1869 (Sess. Acts 1868, p. 68, § 1), expressly donates the swamp lands "to the counties in which they may be respectively situated," and says that they "shall be the absolute property of such counties *for the purposes hereinafter designated.*" This purpose is designated in section 8, which provides that the "net proceeds of the sales of all such lands, after defraying the expenses of draining, reclaiming, surveying and selling the same, as herein provided, shall be paid into the county treasury and become a part of the public school fund of the county." The same use had been before established as to most of the counties by the act of March 3, 1851, page 238; so that the several counties, instead of hold-

ing these lands for general purposes, have received them from the State in trust, with power of disposition, and hold them for the use of the public schools. So, then, they must be held as declared by the statute, and entirely exempt from any liability for ordinary county indebtedness.

Secondly, the original respondents claim that no authority was given them by the act of March 13, 1868, above referred to, to impose the additional tax therein mentioned to pay the county debt, and for the reason that the act itself was unconstitutional, inasmuch as it violates the following provision of section 27, article IV: "The general assembly shall pass no special law for any case for which provision can be made by a general law," etc. In The State *ex rel.* Henderson v. The Judges of Boone County Court, 50 Mo. 317, this clause was considered, but as it does not clearly appear upon what principle the majority of the court agreed to the judgment in that case, this question may be considered still open. Upon one side it is claimed that the question whether a provision to reach the case can be made by a general law is a judicial one, upon which courts must act whenever in their opinion the Legislature has violated the provision; and upon the other hand it is contended that the question of the necessity for the local act must be passed upon by the Legislature, and that its decision cannot be reviewed.

It should be premised that every question of doubt should be resolved in favor of the validity of a legislative act, and, when the constitution restrains the exercise of legislative power, the restraint itself and the terms upon which it is imposed should be so construed as to sustain the power as exercised, unless such construction is clearly unconscionable. (Sedgw. Stat. and Const. Law, 482; Cooley Const. Lim. 182; 19 Pick. 95; 20 Wend. 599; 6 Cranch, 128.)

The section containing the above constitutional clause contains an express prohibition against legislation in regard to various matters, and it is not disputed that this prohibition is absolute, that the legislative body is without discretion as to those matters, and that the courts would refuse to give effect to any act which disregarded it. But the prohibition against special laws is not

general, but only against a class of them, and that class is not designated by their object or subject-matter, but embraces such cases as in the opinion of some person or body can be reached by general laws. Who is to decide what cases are included in this prohibited class? Clearly the Legislature; at least in the first instance. Whether the local object could be effected by a general act may be a matter of doubt. One legislative body might differ from another, and one court from another. It is not a question of law so much as a question of fact, and when a bill is introduced, for instance, to relieve a particular county under special circumstances, the Legislature must first decide whether they are entitled to the relief; and, second, as to the manner of giving it, which involves the consideration whether a general law will reach the case. A local law is considered necessary, and the act is passed. Where do we get appellate power in the case, the power to review legislative discretion — a discretion expressly required to be exercised by the legislative body? I cannot find it in the relation we hold to that body, and in the obligation we are under to resolve every doubt in favor of the legality of their acts. If it were intended to make the prohibition absolute as to certain acts, they would have been included in those expressly provided against. The constitutions of some of the States have increased the list of such prohibitions, and as to those included within it there is no doubt. The Legislature has no discretion, no outside question to decide or fact to ascertain, but is forbidden to meddle with the subject. But not so under the clause in question, and I am compelled, upon fresh examination, to concur in the views of Judge Adams upon the subject, as expressed in The State v. Boone County Court. I can find no other safe rule dividing the judicial from the legislative power.

I am aware that in our sister State of Iowa it is held otherwise, and I have a high respect for the opinion of its court. The first case was *Ex parte* Fritz, 9 Iowa, 33, and its doctrine upon this point has been followed in several subsequent cases. *Ex parte* Fritz was based, so far as authority is concerned, upon Thomas v. Board of Commissioners, 5 Ind. 4, a case since overruled in Gentile v. The State, 29 Ind. 409. The act of special legislation

under consideration in the Iowa case was expressly prohibited by another clause in the constitution of that State, although the court held that a prohibition was also implied by a clause similar to the one we are now considering. Neither the decision of that case nor of the ones that followed necessarily involved the opinion given by the court upon the latter clause.

The Supreme Court of Nevada, in Clarke v. Irwin, 5 Nevada, 124, says in a line that the court must inquire and decide the point, although the question was not necessarily involved, and that court also cited and relied upon the overruled case in 5 Indiana. I find no other case where the same view is held.

In Atkinson v. M. & C. R.R. Co., 15 Ohio St. 21, the prohibition against the legislative act declared unconstitutional was express and unconditional. There are, however, cases where conditional prohibitions are held to be addressed to the Legislature. In The People v. Lake County, 33 Cal. 487, it appeared that the constitution of the State had required the Legislature " to provide a system of county governments which shall be, as near as practicable, uniform throughout the State." Under it the forms of local government varied greatly in different counties, and the court threw the responsibility upon the Legislature and refused to interfere against the exercise of legislative discretion in the matter. The State v. Hitchcock, 1 Kan. 173, was cited by Judge Adams in The State v. Boone County Court, and is directly in point.

In Gentile v. The State, 29 Ind. 409, the Supreme Court of that State reviews the case in 5 Ind., and says that " the reasoning upon which it is based is regarded as unsound, and does not, therefore, support the conclusion reached." The court further speaks of the restriction as " not specific as to particular cases to which it applies, and hence it requires the exercise of legislative judgment in determining the question of its application in each case as it may arise. It is nevertheless a restriction binding upon the conscience of every member of the body, the application of which must be judged and determined as cases are presented, under the oath which all the members are required to take before entering upon their duties to support the constitution of the State," etc.

It is said, and with great force, that in consequence of the habit in our Legislature of giving the local member anything of a local character he .may ask, we are deprived altogether of the benefit of the constitutional provision under consideration. I am well aware of this fact, and believe the public good would have been subserved had the prohibitory list in our constitution been considerably extended, and had less been left to the legislative discretion. But the remedy is not in the judiciary, but in the more careful selection of members of the Legislature, and perhaps in further constitutional amendments.

I think the judgment of the court below should be affirmed. Judge Adams concurs.

Judge Wagner adheres to his opinion delivered in The State _ex rel. Henderson v. Justices of Boone.County Court.