THE STATE in behalf of and to the use of the PUBLIC SCHOOLS OF STODDARD COUNTY, Appellant, v. CRUMB et al.

**Division One, June 30, 1900.**

1. **Swamp and Other School Lands:** PERVERSION OF FUND: PARTIES TO ACTION: EMPLOYING ATTORNEYS. The title of swamp and overflowed lands, conveyed by the State to a county to be held by it for reclamation, drainage and sale, the net proceeds to go to the public school fund of the county, is in the county as trustee, and the proper plaintiff in a suit to remove a cloud upon such lands is "the State of Missouri in behalf of and to the use of the public schools" of the county. The State Board of Education is authorized by statute to institute such suit and to employ attorneys to prosecute it. Nor can the defendant in such case question the right of such attorneys to appear in behalf of said board.

2. ———: ———: EMPLOYMENT OF ATTORNEYS: AFFIRMATIVELY SHOWN. It is not incumbent upon the plaintiff, as a condition precedent to its right to employ attorneys in such suit, to show affirmatively, by its records, that the State Board of Education ascertained that the object of the grant of such lands had been violated or the funds arising therefrom perverted. Such duties being imposed upon said board by statute, the presumption of law prevails, in the absence of all evidence, that they properly discharged their duty.

3. ———: ———: JUDGMENT AGAINST COUNTY: PERSONAL TRUST: GENERAL RELIEF IN EQUITY. If the title vested in the county by such statute was a personal trust, and did not run with the land, then since the action is one in equity and the county is made a defendant, the judgment should be against the county for the amount of money by it received for the sale of such lands.

4. ———: TRUST: INNOCENT PURCHASER: NOTICE. The trust created by said act, which invested said lands in the county for reclamation, drainage and sale, the proceeds to belong to the public school funds of the county, was not a personal one in the county but ran with the land. Therefore a purchaser from the county can not invoke the doctrine of innocent purchaser without notice. The trust being declared by the act which vested the title in the county, every purchaser is presumed to have notice of the character of the county's title and the terms and conditions upon which the county is authorized to sell it.

5. ———: SALE TO PAY GENERAL INDEBTEDNESS OF COUNTY. Such act does not permit the county to sell said lands to pay the general indebtedness of the county, and he who purchases at a sheriff's sale under a judgment against the county for its general indebtedness, buys with notice that he does not take any title to such lands.

6. ———: PRIVATE SALE AT LESS THAN $1.25 PER ACRE. The statute gave the county no authority to sell said lands at private sale or by commissioners. Nor could they be sold at less than $1.25 per acre. Such sales are void and the patents issued in pursuance thereof should be cancelled.

7. ———: COUNTY COURT AS AGENT: NOTICE. The county court of the county in which said lands are by the statutes vested, is not the general agent of the county, but a special agent invested only with the powers prescribed by the act, and all persons buying the lands from the county are charged with notice of the limitations of the court's powers.

State ex rel. Public Schools v. Crumb.

8. ——: LIMITATIONS: LACHES. A suit by the State brought nearly thirty years after an illegal sale by the county of the swamp and other lands belonging to the school funds of the county, is not barred by the statute of limitations, although such lands have passed to third parties. Nor can the State in such case be charged with laches for delaying so long the bringing of such suit.

9. Pleading: ATTACHING EXHIBITS TO PETITION. A copy of an order of a county court attached to the petition as an exhibit, is no part of the petition, and can not, unless offered in evidence, be considered as being in the case.

Appeal from Stoddard Circuit Court.—*Hon. Jno. G. Wear,* Judge.

REVERSED AND REMANDED.

*Henry N. Phillips* and *Linus Sanford* for appellant.

(1) The swamp lands donated by the United States to the State of Missouri under the acts of September 28, 1850, and donated to the several counties by an act of the Legislature, March 27, 1868, are held for school purposes only, and are exempt for ordinary liability for county indebtedness. State ex rel. Robbins, 51 Mo. 85; Sturgeon v. Hampton, 88 Mo. 211; Railroad v. Hatton, 102 Mo. 55; Dunklin Co. v. Chouteau, 120 Mo. 594; Railroad v. Wayne Co., 125 Mo. 356; Hoke v. Chitwood, 127 Mo. 377; Stone v. Perkins, 85 Fed. Rep. 616; Saline Co. v. Wilson, 61 Mo. 237; Acts 1869, p. 67, sec. 3; Coleman v. Farra, 112 Mo. 85; Sturgeon v. Hampton, 88 Mo. 203; Railroad v. Hatton, 102 Mo. 55; Andrew Co. v. Craig, 32 Mo. 528. (a) These statutes do not authorize the county court to appoint a swamp land commissioner to make deeds for the conveyance of swamp lands, and certainly not to compromise them away or to make a patent to them until the full purchase price has been paid. Sturgeon v. Hampton, 88 Mo. 205; Railroad v. Hat-

ton, 102 Mo. 55; Dunklin Co. v. Chouteau, 120 Mo. 594; Hoke v. Chitwood, 127 Mo. 377; Montgomery Co. v. Aukley, 103 Mo. 505. (b) The county court of Stoddard county never had the power to barter its swamp lands—it had the power only to sell them as was provided by law. See acts of the legislature above cited, and cases cited, and also Walcott v. The County, 26 Mo. 272; Book v. Earl, 87 Mo. 256; Price v. Courtney, 87 Mo. 387; Stone v. Perkins, 85 Mo. 616. (2) The sheriff's deed to D. Starks Crumb, Louis M. Ringer et al., did not convey the county's title to the swamp land described in said deed, or any other title, legal or equitable. State ex rel. v. Robbins, 51 Mo. 82; Sturgeon v. Hampton, 88 Mo. 211; Railroad v. Hatton, 102 Mo. 55; Dunklin Co. v. Chouteau, 120 Mo. 594; Railroad v. Wayne Co., 125 Mo. 356.

*C. L. Keaton* and *Martin L. Clardy* for respondents.

(1) The attorneys prosecuting this action have no authority to institute or prosecute the action. There is no evidence of appointment, whatever, in the record, and they assume to act as and for public agents and must show their authority of record; nor was this suit ever authorized by any one, nor does the petition state that the school board has anything to do with it. R. S. 1889, secs. 8039, 8043; Summers v. Tice, 1 Mo. 349; Carpenter v. Town of Lathrop, 51 Mo. 483; State ex rel. v. Luce et al., 62 Fed. Rep. p. 417. (2) A judgment against Crumb would be void, because indispensably necessary parties were not before the court, the same as a judgment against the landlord without making the tenant a party to the action in ejectment. Charter Oak Ins. Co. v. Cummings, 90 Mo. 267; Mallow v. Hind, 12 Wheaton 198; Shields v. Barrow, 17 Howard 139; Barney v. Baltimore, 16 Wallace 286; Gregory v. Stetson, 133 U. S. 586.

(3) The attack of appellant upon the sheriff's deed is unwarranted, and is based upon the false premise and assumption that the judgment recited therein was based upon a general indebtedness, and hence a general judgment against the county, in direct contradiction of Exhibit "C," on pages 19-22 of the record, which says: "Whereas . . . . . . Louis M. Ringer obtained a judgment against Stoddard county upon warrants upon the swamp land fund of said county, etc.," and the swamp lands were donated to the States and counties primarily to drain and reclaim the same, and it was only the net proceeds, after defraying all the expenses, that should go into the school fund, and with this fund we have nothing to do in this action. R. S. 1855, pp. 1005, 1006, secs. 1, 2, 3 and 6; R. S. 1865, pp. 278, 279, secs. 1, 2, 3, 4, 5 and 6; R. S. 1889, sec. 6461; State ex rel. v. Wayne County Court, 98 Mo. 362; Hall v. Gregg, 138 Mo. 286; Laws 1854, 1855, p. 154, secs. 8-12 and Laws 1855, p. 351, sec. 4; American Emigrant Co. v. Adams Co., 100 U. S. 61; 9 U. S. Statutes at Large, p. 519.    (4) The sheriff's deed to D. Starks Crumb et al. conveyed the absolute title to the lands described therein, as it was a sale for the reclamation of the swamp lands of said county. State ex rel. v. Wayne Co. Court, 98 Mo. 362; Railroad v. Hatton, 102 Mo. 45.    (5) The trusts reposed in the county and State are personal trusts, and do not run with the land; hence, Farlow is an innocent purchaser of the land and took the absolute title under his warranty deed. Linville et al. v. Bohanan, 60 Mo. 554; Pool v. Brown, 60 Mo. 675; American Emigrant Co. v. Adams Co., 100 U. S. 61; Hagar v. Reclamation Dist. No. 186, 111 U. S. 701; Butler Co. v. Boatmen's Bank, 143 Mo. 13, 27.    (6) The compromise between the purchasers at the sheriff's sale, after the lands had been sold for drainage and reclamation of the swamp lands of the county, is in all things valid, as has been held

by the United States Supreme Court. Mills Co. v. Railroad, 107 U. S. 567. (7) The county is estopped or barred by laches and by limitation by collecting money and taxes, always disclaiming ownership of the lands, etc., from denying the validity of the title vested formerly in Crumb, and now vested in Himmelberger, one of the defendants (respondents). County v. Post, 93 U. S. 502; County v. American Emigrant Co., 93 U. S. 124; Iowa Land Co. v. County, 36 Iowa 48; Audubon Co. v. Emigrant Co., 40 Iowa 460; Smith v. City of Osage, 80 Iowa 84; Indiana v. Milk, 11 Fed. Rep. 389; Hough v. Buchanan, 27 Fed. Rep. 328; Pengra v. Munz, 29 Fed. Rep. 830; U. S. v. Willamet Co., 42 Fed. Rep. 389; Reuter v. Lawe, 34 L. R. A. 733 (Wis.); United States v. Willamet Co., 54 Fed. Rep. 807; Murphy v. Packer, 152 U. S. 398; St. Louis v. Consol. Coal Co., 113 Mo. 83; Curnen v. Mayor, 79 N. Y. 511; Joliet v. Woerner, 166 Ill. 34; Railroad v. Joliet, 79 Ill. 25; Michigan v. Railroad, 89 Mich. 481; Michigan v. Railroad, 69 Fed. Rep. 1161; Colonial Co. v. Tubbs, 45 S. W. Rep. 623; Dunklin Co. v. Chouteau, 120 Mo. 577; Oxley Stave Co. v. Butler Co., 121 Mo. 641; Elliott v. Buffington, 149 Mo. 663; Wilson v. Beckwith, 140 Mo. 369; Board of Coms. of Johnson Co. v. January, 94 S. W. Rep. 202.

MARSHALL, J.—This is a proceeding in equity to remove a cloud upon the title to eighty thousand, one hundred and seventy-two acres of land in Stoddard county, being a part of the land granted to the State of Missouri by the United States, by the Act of Congress of September 28, 1850, relating to swamp and overflowed land, and thereafter by various acts of the General Assembly of Missouri conveyed by the State to Stoddard county, to be held by it for reclamation, drainage and sale, and the net proceeds to go to the public school fund of the county.

The controversy arises in this wise: On the 13th of March, 1868, Louis M. Ringer obtained a general judgment against Stoddard county for $1,136.90, and in August following caused an execution to be issued and levied upon one hundred and seven thousand acres of the swamp and overflowed lands conveyed by the State to Stoddard county, for the purposes above stated, had the land sold under the execution on September 16th, 1868, and purchased at that sale eighty thousand one hundred and seventy-two acres thereof for six hundred and sixty-three dollars and ninety-five cents, other persons purchasing the remainder thereof. Afterwards on the 28th day of April, 1869, Ringer conveyed the land in controversy, so purchased by him, to the defendant D. Starks Crumb, by a quit-claim deed. At the February term, 1869, the county court of Stoddard county employed attorneys to have the sale of the land aforesaid set aside and agreed to give them fifty thousand acres of the land if they succeeded. Exhibit C attached to the petition shows that at a special term in April, 1869, the county court entered of record an order which recited the obtaining of the Ringer judgment against the county *"upon warrants on the swamp land fund of said county,"* the execution· thereon, the sale thereunder to Ringer and others, the employment of attorneys to have the sale set aside, the fact that the suit would continue for years and the result be uncertain, and that "it is therefore considered by the court that a compromise of the same would be for the benefit of said county of Stoddard if made with the parties who bought said lands at said sale [Ringer and others], and whereas, said purchasers agree and covenant to pay to the said county the sum of thirteen thousand five hundred dollars, *in Stoddard county warrants*, which sum is to be paid into the county treasury on the following terms and the following manner, to-wit: Said parties either paying as aforesaid, or executing their promissory notes, bearing

six per cent interest, one-half of said sum shall be paid as aforesaid, on or before the first day of January, A. D. 1870, and the remaining half on the first day of January, A. D. 1871." The order then proceeds in the shape of a judgment directing letters patent to be issued to the purchasers conveying all the right, title, interest and claim of the county in and to the lands sold under such execution, and appointed a commissioner to execute and deliver the patents upon the purchasers producing the treasurer's receipt for the $13,500. The commissioner issued patents accordingly, on the 1st day of May, 1869, reciting that the patentee had "made full payment to the said county of Stoddard." Thereafter Crumb conveyed the whole or a part, it is not clear which, to John S. Farlow, and Farlow conveyed the whole or a part, it is not altogether clear which, to Himmelberger.

Upon demand of the citizens of the county and of the attorney of the State Board of Education in the Fourteenth congressional district, the county court refused to bring suit to set aside the deed and patents, and thereupon this suit was begun to the March term, 1886, of the Stoddard Circuit Court. The petition sets out the above facts and alleges the sale by the sheriff to be null and void, that the compromise was fraudulent and the result of a conspiracy, and so known to be by all the defendants, that Himmelberger claims to own the land and is in possession thereof, and asks a cancellation of the sheriff's deed, and of the patents from the county.

The answer of Crumb denies the legal capacity of the plaintiff and relator to sue and also the right of the attorneys to represent the plaintiff and relator; denies that the plaintiff and relator are the real parties in interest and avers that Stoddard county is the only real party in interest; sets up that under the several acts of the General Assembly all swamp and overflowed lands were donated by the State to the county in fee simple absolute with full power and au-

thority in the county to sell and dispose of the same as it might think proper, either with or without draining or reclaiming the same, as in its discretion it might think most conducive to the interests of the county, and that under that, power the county disposed of these lands, "as alleged in plaintiff's petition;" averred that the county had power to issue warrants, "for certain purposes," on the swamp land fund of the county, which should be a charge upon the swamp and overflowed lands and the proceeds thereof, which the county did; that Ringer became the owner of such warrants and for the purpose of collecting them and making them a lien on such lands, instituted the suit aforesaid, obtained judgment thereon, caused the lands to be sold and became the purchaser thereof, and "thereby became seized of the title in fee simple absolute of, in and to all said lands and real estate mentioned and set out in plaintiff's petition;" admits the compromise and patenting of the lands by the county court; pleads that he has sold the lands and hence his grantees are necessary parties; interposes the ten year statute of limitations, contends that the petition does not state facts sufficient to constitute a cause of action, denies all fraud and conspiracy, avers that the litigation is litigious, and prays judgment, "that plaintiff be required to prosecute this action to a final judgment, and that plaintiff be forever barred from prosecuting any other and further pretended actions in this behalf and for all proper relief herein."

The answer of Himmelberger and Farlow is a general denial. That of the county is a general denial, with a special plea that it is not a necessary party defendant. The reply is a general denial.

The plaintiff's evidence consists of the patents from the United States to the State of Missouri and from the State to Stoddard county; the judgment of March 13, 1868, in favor of Ringer against Stoddard county, which was a general

judgment by default, upon personal service, for $1,136.81; parol testimony that the execution and return thereon were lost, the sheriff's deed conveying 80,172.71 acres of land to Ringer, for a consideration of $663.95; a quit-claim deed from Ringer to Crumb of 240 acres, for a consideration of $1.50; a quit-claim deed from Ringer to Crumb for 2,201 acres of land for a consideration of $500; two patents dated April 29, 1868 (one under seal and the other without seal), from the special commissioner appointed by the county court to defendant Crumb, which recite that Crumb has made full payment to the county for the land; a deed dated May 16th, 1871, from Crumb to John S. Farlow of various tracts, aggregating 15,995.25 acres, for a consideration of $24,000; a deed dated January 29, 1886, from Farlow to Himmelberger to 340 acres, for a consideration of $1,700; the testimony of Linus Sanford, H. N. Phillips and T. H. Malden, that the county court upon their application and that of citizens, and that of Mr. Phillips as attorney for the State Board of Education in the 14th congressional district, refused to institute suit to set aside the sheriff's deed and the patents from the county to the land in controversy, and the testimony of Mr. Phillips that as such attorney he instituted this suit by instruction from the State Board of Education.

The defendant's evidence consists of the testimony of defendant Crumb that he was one of the purchasers at the sheriff's sale under the Ringer judgment, and afterwards received the patents from the county; that the first patents did not have a seal affixed to the commissioner's name, and several years afterwards new patents were made out with a seal attached and sent to the commissioner, who had become a non-resident of the State, and he executed them; that prior to the institution of this suit he had sold all the land he had thus acquired, or it had been sold for taxes, but to whom he sold he did not state, and that for the last twenty years

taxes for county, state and municipal purposes had been col-
lected against the lands in controversy.

The circuit court entered judgment for the defendants,
and after proper steps the plaintiff appealed to this court.

## I.

The right of the plaintiff and relator to maintain this·
action, and also the right of the attorneys to represent the
plaintiff and relator is challenged by the defendants.   This
contention rests upon the proposition that the fee simple title
to the lands is in the county and hence the county is the
proper party plaintiff.

This position is untenable.   It is true that the title to
the land is in the county as trustee for the purpose of drain-
age, reclamation and sale, or sale without previous drainage
or reclamation, as the interests of the trust require, but in
any and every event the proceeds of the sale are by law
reserved and applied to the school fund of the county.   The
supervision of instruction in the public schools is vested by
section 8039, Revised Statutes 1889, in a "board of educa-
tion," composed of the Superintendent of Public Schools, the
Governor, Secretary of State and Attorney General, and
that board is charged with the duty to direct "the investment
of all moneys received by the State to be applied to the
capital of any fund for educational purposes; to see that all
funds are applied to such branch of the educational interest
of the State as by grant, gift, devise or law they were origin-
ally intended."

Section 8040, Revised Statutes 1889 (sec. 7091, R. S.
1879) provides:  "The State Board of Education is hereby
required to ascertain from all the various counties in the
State having swamp or other school lands what disposition
has been made of the same, and when in any case it shall be

ascertained that the objects of the grant have been violated, the funds arising therefrom perverted, or the lands or moneys used for any purpose other than those named in the grant, and by the law intended, it shall be their duty to institute suits to recover the same *in the name of the State in behalf of the public schools of the county* in which such lands lie."

Section 8042, Revised Statutes 1889 (sec. 7093, R. S. 1879) gives the power to the State Board of Education to employ a competent attorney in each congressional district to prosecute such suits, fixes the attorney's compensation, and in case lands are recovered by such actions, requires the county courts to fix the attorney's fee and pay out of the general revenue of the county, and if the county court neglects or refuses to do so, gives the attorney a right of action against the county and provides that the judgment shall be against the county and not against the school fund.

Thus there is express statutory authority for this suit to be maintained in this form under this title, and also the same authority to the attorneys to represent the plaintiff herein.

It is insisted, however, that it was incumbent upon the plaintiff to show affirmatively that the State Board of Education did ascertain that the objects of the grant of these lands by the State to the county had been violated, the funds arising therefrom perverted or the lands or money used for a purpose not named in the grant or intended by law, as a condition precedent to its right to employ attorneys, and that the attorney's employment could only be shown by the record of the proceedings of the State Board of Education. The doctrine is well established that in the absence of evidence to the contrary, the presumption always prevails that public officers have discharged their duties properly. [Miller v. Dunn, 62 Mo. 216; Owen v. Baker, 101 Mo. 407; State ex rel. v. Mastin, 103 Mo. 508; Leonard v. Sparks, 117 Mo.

103; Mitchner v. Holmes, 117 Mo. 185; State v. Lord, 118 Mo. 1.] This doctrine of presumption has been applied to persons generally, and it has been held that every man is presumed to have performed all his official and social duties. [Mathias v. O'Neill, 94 Mo. 520; Agan v. Shannon, 103 Mo. 661; State ex rel. v. Bank of Neosho, 120 Mo. 161; Blodgett v. Schaffer, 94 Mo. 652; Bluedorn v. Railroad, 108 Mo. 439; Chouteau v. Railroad, 122 Mo. 375.]

There is no contrary showing in this case, and therefore the presumption obtains that the State Board of Education did its duty and ascertained the facts, which existed as this record clearly discloses, which authorized and required that this suit should be instituted. The attorney for the plaintiff was such an attorney as section 8042, Revised Statutes 1889, contemplates should be appointed and his uncontradicted testimony shows that he was properly appointed. It was not necessary for him to have a warrant of attorney, for section 2094, Revised Statutes 1889, authorizes an attorney to appear without a warrant of attorney, except in cases where such warrant is specially required by law, and this is not such a case. Neither was it necessary to prove his employment by the records of the State Board of Education, for he had a right to appear in his official capacity as an attorney and officer of the court in all cases except those specially provided for by law. Nor was he accountable to the defendant in this kind of a case for his right to appear. The party for whom he appeared could alone question his right to appear in this and ordinary litigation.

II.

The defendants next contend that the legal title to the land was in the county to be held by it for drainage and reclamation and sale for the benefit of the school fund, and

that the trust was a personal one and was not impressed on the land and does not run with the land, and therefore the purchasers from the county got a good title, and the plaintiff is relegated to a claim against the county to recover the proceeds of the sale of the land or for damages if the trust was abused or violated.

Even if this contention was true the judgment of the circuit court is erroneous. The county is a party defendant in this action, and there is no denial of the fact that in one form or another the county received $663.95 from the sale of the lands here involved by the sheriff under the Ringer judgment, and $13,500 from the compromise and patenting of the land so sold. This is a suit in equity, and it was the duty of the court to grant full relief, after it had obtained jurisdiction. The plaintiff was clearly therefore entitled to a judgment for $14,163.95, with interest from the date of the sale and compromise. The judgment was for the defendants, and can not stand under these circumstances.

But the trust was not simply a personal trust. It ran with the land. Therefore there could be no room for invoking the doctrine of innocent purchaser for value and without notice, for the trust being one declared by the act that vested title in the county every person is presumed to know the law, and is also presumed to have notice of the character of the county's title and the terms and conditions upon which the county was authorized to sell it.   [Sturgeon v. Hampton, 88 Mo. l. c. 213; State ex rel. v. Hays, 52 Mo. 578; Browne's Appeal, 69 Mo. App. 159; Keating v. Kansas City, 84 Mo. 415; Thomson v. Boonville, 61 Mo. 282; St. Louis to use v. Clemens, 52 Mo. 133; Forry v. Ridge, 56 Mo. App. 615; Saxton v. St. Joseph, 60 Mo. 153; Thrush v. Cameron, 21 Mo. App. 394; Book v. Earl, 87 Mo. l. c. 256.] The principle is the same whether applied to agents of a municipal corporation, an agent of the county or of the State.

In every instance the agents' power to act is derived from the law and is limited by the law and to the manner provided by the law, and every person dealing with such an agent has, in the eyes of the law, as much knowledge of the powers and duties of the agent as the agent himself has.

The swamp and overflowed lands were granted, in 1850, by the United States to the State of Missouri. Until the Act of March 10th, 1869 (Laws 1869, p. 66), they could only be sold upon patents issued by the State. The Act of 1868 (Laws 1868, p. 68, sec. 1) conveyed such lands to the counties and provided that they should "be the absolute property of such counties, for the purposes hereinafter designated." Section 2 of the act authorized the counties to have such lands "drained and reclaimed, so as to render them tillable, or otherwise subservient to the purposes of this act," and for this purpose provided that the county might appoint one or more commissioners who should superintend the draining, reclaiming, and surveying of the lands. Section 3 of the act provided that whenever in the judgment of the county court "it shall be to the interest of said counties to do so," it might order the sheriff to sell the land, at public vendue, upon sixty days notice, in such quantities as the court thought proper, "with or without reclaiming the same, as, in their discretion, they may think most conducive of the interests of their respective counties," but provided, "that no land shall be sold, under the provisions of this act, for less than one dollar and twenty-five cents per acre, within five years from the first day of January, eighteen hundred and sixty-six." Section 7 of the act provided: "To enable the county courts to carry the provisions of this act into effect, they shall have power to borrow money, and to issue bonds of the county therefor." Section 8 of the act is as follows: "The net proceeds of the sales of all such lands, after defraying the expenses of draining, reclaiming, surveying, and selling

the same, as herein provided, shall be paid into the county treasury, and become a part of the public school fund of the county."

Section 18 of the act provided that "money arising from the sale of land under this act shall constitute a permanent fund, and shall be loaned out by the respective county courts in the same manner and upon the same terms that the township school funds are now required by law to be loaned out." And section 19 of the act provided: "The accruing interests upon the loans aforesaid shall be apportioned and distributed at the same time and in the same manner as other county school moneys are required by law to be apportioned and distributed."

The plan, scheme and policy of the act was to vest the title to the lands in the county for the purpose of drainage, reclamation and sale or sale without drainage or reclamation, the proceeds to go to the school fund; to authorize the county to have the lands drained, reclaimed and surveyed under the direction of a commissioner and to give power to the county to raise money for this purpose by borrowing money and issuing bonds; to have the land sold by the sheriff, at public vendue, on sixty days notice, but for not less than one dollar and twenty-five cents an acre within five years from January 1st, 1866; and to require the net proceeds of such sale after deducting the expenses of draining, reclaiming, surveying and selling the same, to be paid into the county treasury and become a part of the public school fund of the county, and to be loaned out like other school funds, and only the interest arising therefrom to be apportioned and distributed like other school funds.

This act was approved March 27, 1868. Ringer obtained his judgment on March 13, 1868. The sheriff sold the land under the execution on September 16, 1868. The judgment therefore antedated the approval of the Act, but

the sale under the execution was after the act took effect. The judgment was a general judgment against the county. There is no competent evidence in this record to support the defendant's contention that the judgment was based "upon warrants on the swamp land fund of said county." The order of compromise of April 23, 1869, recites that to be a fact, but that order was not offered in evidence in this case. True, a copy of it is attached to the plaintiffs' petition as an exhibit, but the exhibit is no part of the petition. [Kearney v. Woodson, 4 Mo. 114; Hall v. Harrison, 21 Mo. 227; Bowling v. McFarland, 38 Mo. 465; Peake v. Bell, 65 Mo. 224; Moore v. Dixon, 50 Mo. 425; Vaughan v. Daniels, 98 Mo. 230; State ex rel. v. Rau, 93 Mo. 126.] Hence there is nothing in this record showing that the Ringer judgment was based upon anything but ordinary county indebtedness, and nothing to show that the county ever appointed a commissioner to have the lands drained, reclaimed and surveyed, nor that it ever borrowed any money or issued any bonds for such purpose, nor that in fact it ever attempted to drain, reclaim or survey the lands.

The sheriff therefore sold these lands, which the State conveyed to the county for the benefit of the school fund, to satisfy a general judgment against the county. Such a sale was without authority of law and conveyed no title to the purchaser. Such lands were exempt from such a sale for ordinary county indebtedness. [State ex rel. v. Co. Ct. New Madrid Co., 51 Mo. 82.] The property held by a person in trust can not be sold under legal process to satisfy a personal judgment for a personal debt of the trustee. The effect of this sale was to make the school lands pay $1,136.90 of the general indebtedness of the county and this could not lawfully be done. [Montgomery Co. v. Auchley, 103 Mo. 492.] The sheriff's deed should therefore be cancelled as a cloud on the title to the lands.

But defendants rely also upon the patents issued by the county, through its special commissioner on May 1, 1869.

Prior to the passage of the Act of March 10, 1869, the patents for all such lands sold by the county courts, were issued by the Governor, countersigned by the Secretary of State and registered in the office of Register of Lands. [Laws 1868, p. 69, sec. 4.] The 6th section of the Act of 1869 (Laws 1869, p. 64, sec. 6) authorized the county courts to issue the patents to such lands and to sell and dispose of such lands like any other real estate belonging to the county. But this act has been held by this court not to destroy the trust created by the Act of 1868, and not to vest absolute ownership of such lands in the county. [State ex rel. v. Co. Ct. New Madrid Co., 51 Mo. l. c. 85; Stürgeon v. Hampton, 88 Mo. 203; C. G. S. W. Railroad Co. v. Hatton, 102 Mo. l. c. 55; St. L. C. G. & F. S. Railroad Co. v. Wayne Co., 125 Mo. 351; Hooke v. Chitwood, 127 Mo. 372; State ex rel. v. Wayne Co. Ct., 98 Mo. l. c. 366.]

The act of 1869 did not therefore divest or destroy the trust upon which the county held the land, nor did it change the manner of selling the same, nor remove the limitation as to selling for not less than one dollar and twenty-five cents per acre within five years after January 1, 1866. Its only effect was to authorize the county to issue the patent instead of having it issued by the State.

When therefore the county court by its order of April 23, 1869, ordered these lands to be conveyed by a commissioner to the purchasers at the execution sale under the Ringer judgment, in consideration of $13,500 "in Stoddard county warrants, or, at the option of the purchasers, in cash, one-half payable January 1, 1870, and the other half January 1, 1871," it acted wholly without authority of law. As before shown, these lands could only be sold at that time by the sheriff, at public vendue, on sixty days notice, for

less than one dollar and twenty-five cents an acre, by order of the county court. The proceeds were required to go to the school fund. The county court had no power to authorize them to be sold for $13,500 "in Stoddard county warrants." That they were so paid for is *prima facie* shown by the fact that the commissioner's deed was dated May 1st, 1869, which could not have been the case if the purchasers had elected to pay in cash, one-half on January 1, 1870, and the other half on January 1, 1871. These inherent infirmities in these patents and want of power of the county court was known to the purchasers, for they knew the law and knew the power of the court under the law.

It is clear that the trust ran with the land, not only from the statutory provisions quoted, but from the decisions of this court from the case of State ex rel. v. Co. Ct. New Madrid Co., 51 Mo. 82, down to St. L. C. G. & F. S. Railroad Co. v. Wayne Co., 125 Mo. 351, and from the provisions of section 8042, Revised Statutes 1889, which contemplate that such a suit as this shall be brought to recover lands, and from section 8040, Revised Statutes 1889, which makes it the duty of the State Board of Education to ascertain and sue for lands which have been used for purposes other than those named in the grant or intended by law. It is equally well decided in this State that in selling these swamp lands the county court is not the general agent of the county, but is a special agent invested with only the powers prescribed by the act granting these lands to the counties and that all persons dealing with the county court in respect to these lands are charged with notice of its power. [Sturgeon v. Hampton, 88 Mo. 211; C., G. S. W. Railroad Co. v. Hatton, 102 Mo. l. c. 55; State ex rel. v. Wayne Co. Ct., 98 Mo. l. c. 366; St. L., C. G. & F. S. Railroad Co. v. Wayne Co., 125 Mo. 351; Hooke v. Chitwood, 127 Mo. l. c. 377.] The case of Pool v. Brown, 98 Mo. 675, holds that the trust is a per-

sonal one as to the State, but that as to the county the trust runs with the land, and that the Acts of 1869 and 1868 do not destroy the trust and remove the limitations upon the county as to the manner of selling these lands and the price for which they might be sold, and therefore there is no conflict between that case and the prior and subsequent decisions of this court on these questions.

The circuit court therefore erred in not cancelling the patents issued by the county court through its commissioner.

### III.

It is not clear whether Crumb has conveyed all land acquired by him, nor whether Farlow has conveyed all the land he acquired. As the case must be retried, the plaintiff should be granted leave to amend so as to bring all the persons before the court who now claim to own any of the land or who are in possession thereof, and upon the parties being before the court the case should be tried in conformity herewith.

It is only necessary to add that the plaintiff's rights are not barred by limitation. [Sec. 6772, R. S. 1889.] Neither is there any laches in the case, nor is the case, from its very nature, susceptible of being controlled by the doctrine of laches.

For these reasons the judgment of the circuit court is reversed and the cause remanded to be proceeded with in accordance herewith.

All concur.