## BONOCIO RAMOS, Plff.,

*v.*

## PEOPLE OF PORTO RICO, Dfts.

San Juan, Law, No. 682.

EXECUTION UNDER MANDATE FROM SUPREME COURT.

Injunction—Equitable Procedure.

     1. Injunction is a remedy peculiar under Federal practice to a court of equity, and cannot be entertained in a law case.

People of Porto Rico.

     2. If the People of Porto Rico intervene in a case, they are in that case for all the purposes thereof. They cannot come in and out of court at will.

Ramos v. People.

Same—Escheat.

3. Where the People of Porto Rico claim an escheat, they do so as a quasi heir and are subject to the liabilities of an individual heir.

Same—A University.

4. Under Civil Code, § 923, the University of Porto Rico is entitled to property escheated. The university becomes something in the nature of a *cestui que trust* of property of which the People of Porto Rico are the trustee; but the People of Porto Rico are the proper parties in suits concerning the title.

Execution—When too Broad.

5. The fact that an execution is too broad in that it runs against property which is not subject to execution, as well as property which is, does not impair the execution when it is actually levied only on the property which is liable.

Execution—Directed by Supreme Court.

6. It may be doubted when an execution is issued by the clerk of the district court under the mandate of the Supreme Court, whether the district court can interfere.

Opinion filed May 28, 1914.

———

*Mr. Frank Antonsanti* for plaintiff.

*Mr. W. H. Pitkin, Jr.,* for defendants.

HAMILTON, Judge, delivered the following opinion:

The plaintiff sued for possession of certain lands which had escheated to the People of Porto Rico from the estate of Eliza Kortright, deceased, she leaving no heirs. The People of Porto Rico were made a party defendant at their own request. The plaintiff was successful and upon appeal to the Supreme Court of the United States the judgment below was affirmed (232

U. S. 627, 58 L. ed. 763, 34 Sup. Ct. Rep. 461). A mandate from the Supreme Court dated May 1, 1914, recites that "it is now here ordered and adjudged by this court that the judgment of the said district court in this cause be, and the same is hereby, affirmed with costs, and interest until paid at the same rate per annum that similar judgments bear in the courts of Porto Rico; and that the said plaintiff, Bonocio Ramos, recover against the said defendant . . . for his costs herein expended, and have execution therefor. You, therefore, are hereby commanded that such execution and proceedings be had in said cause, as, according to right and justice and the laws of the United States, ought to be had, the said writ of error notwithstanding."

The plaintiff was accordingly put in possession of the land in question, and an execution issued from the office of the clerk of this court to the marshal, directing: "You are hereby commanded that of the goods and chattels, and for want thereof, then of the lands and tenements, of the People of Porto Rico in your district, you cause to be made the sum of six thousand ($6,000) dollars as damages, and one hundred nineteen dollars and seventy-five cents ($119.75) costs of suit, which by the judgment of the district court of the United States for the district of Porto Rico, at the April term thereof, in the year 1912, the plaintiff, Bonocio Ramos Y Caballero, recovered against the said defendant, the People of Porto Rico, with interest thereon at 6 per cent per annum from the 22d day of April A. D. 1912."

This execution was levied upon other lands which had escheated from the estate of Eliza Kortright to the People of Porto Rico.

Ramos v. People. ·

The People of Porto Rico now appear by their attorney general and move to quash, vacate, and set aside the writ of execution of the levy thereunder, and for injunction.

1. The matter of injunction will be disposed of first. This remedy is one peculiar under the Federal practice to a court of equity, and cannot be entertained in a law case, such as the case at bar. The proper practice is a motion in the current suit to quash or otherwise control the execution, and, there being such a remedy at law, there would be no jurisdiction to afford injunctive relief, even were a bill filed for that purpose. High, Inj. 4th ed. § 32; 17 Cyc. 1169.

2. Several defects are alleged as to the execution. In the first place, it is insisted that the People of Porto Rico are a sovereign, and are not subject to the process of this court. Porto Rico v. Rosaly Y Castillo, 227. U. S. 270, 57 L. ed. 507, 33 Sup. Ct. Rep. 352. It is admitted that the Supreme Court in this case has decided that the People of Porto Rico are not in this instance immune from suit because they themselves sought the jurisdiction of this court, and cannot be permitted to come in and out of court at their pleasure. Having once come in, they are in the suit and are to be treated as other suitors. But it is claimed that a suit does not necessarily involve an execution, and that the People of Porto Rico are exempt from this writ, although they may be subject to mandamus or other appropriate writ to compel the proper officials to levy a tax or otherwise pay the judgment.

It is doubtless true that when the People of Porto Rico voluntarily subject themselves to a suit, they must stand the consequences of the suit. A suit is an entirety and embraces not only pleadings and judgment, but a remedy also. Never-

theless it is true that remedies differ in different suits, and what may be appropriate to one form of action may not apply in another. The same is true as to the kind of defendant. A remedy against one would not necessarily be proper against another defendant. If the People of Porto Rico had no property subject to levy, it would be a vain thing to issue an execution against them.

3. The plaintiff, however, alleges that in the case of an escheat the Sovereign, under the Porto Rican statute, takes the place of the heir. The law is found in the Civil Code of Porto Rico, §§ 923 and 924.

Section 923 of the Civil Code, as amended March 7, 1912 (Laws 1912, p. 999), provides: "In default of persons who have the right to inherit in accordance with the preceding articles, the People of Porto Rico shall take the inheritance and devote the property to the benefit of the university funds."

Section 924 of the Civil Code provides: "Rights and obligations of charitable and educational institutions under the foregoing section shall be the same as those of other heirs."

Under this it would seem that the People of Porto Rico hold not as a sovereign, but as a quasi heir. It cannot be permitted that the People of Porto Rico should, through the assistance of this court, litigate, so to speak, in a private capacity, and then when they lose set up that what had been held in a private capacity had become of a public character.

4. It is alleged, however, by the People of Porto Rico, that the property in question does not belong to the People as such, but becomes the property of the University of Porto Rico. This is the effect of § 923 of the Civil Code above quoted, which substitutes the university funds for establishments for charity

and education in general. It does not seem, however, that this would make any practical difference. The title is not changed under § 923, although the application of the proceeds is changed. The University of Porto Rico may be what would technically be called a *certui que trust,* and the People of Porto Rico may be the trustee; but there would appear to be no reason to make additional parties in this suit, or why the People of Porto Rico are not the proper defendants for all purposes.

The case of State ex rel. Robbins v. County Ct. 51 Mo. 82, is cited as showing that public lands which are held by the State in trust for the use of public schools cannot be levied upon. That was a case where public lands were owned by the State and donated to the public school fund, but the lands did not come to the State subject to any claim of an outsider. There was the bare question whether school lands could be levied upon to pay a general judgment against the county. The case at bar, however, is entirely different. The lands levied on did not come with a clear title, but subject to the same claims as in the hands of the heirless owner. It was somewhat analogous to the case where an administrator, exempt from suit within a certain period, nevertheless can be sued within that time for property which does not belong to the estate at all. He holds it, in other words, subject to a defect in title. Alabama State Bank v. Glass, 82 Ala. 278, 2 So. 641; Glass v. Woolf, 82 Ala. 281, 3 So. 11.

5. It is urged that the execution is defective, and, as it was issued from this court, should be quashed by this court because it runs against all and any property of the People of Porto Rico, the bulk of which is governmental and exempt from levy. But even if this be admitted, it is, under the circumstances of

the case, a technical error which amounts to error without injury. The fact is that, however the execution is worded, the levy under the execution has been limited to part of the property which has escheated from Eliza Kortright. It is stated by the plaintiff on argument that there is no intention of making a levy on any other property except that so escheated. It would seem as if the motion of the People of Porto Rico is therefore premature. Nothing has been done which injures them, and it will be time enough to apply when something is done which does injure them. There are many cases deciding that a levy cannot be made upon public property. Emery County v. Burresen, 14 Utah, 328, 37 L.R.A. 732, 60 Am. St. Rep. 898, 47 Pac. 91; Murphree v. Mobile, 104 Ala. 532, 16 So. 544. But none has been cited showing that an execution cannot issue in the usual form, provided the levy be limited to property which is subject to execution. This comes up in the common-law states when execution is issued on a judgment against a defendant who has property exempt from levy and sale. There is no different wording in the execution. It is merely the privilege of the defendant to apply to the court, and have avoided any improper levy that has been made. The court will not assume that the marshal will levy upon property which is exempt from levy.

6. It may be doubted, moreover, whether this court has the right to make any change in the phraseology of the writ. The execution follows the mandate of the Supreme Court of the United States, and if there is any error it is in the clerk's office of the Supreme Court, and not in the clerk's office of the district court. *Pro hac vice* the marshal is carrying out the mandate of the Supreme Court of the United States. If the clerk of

the district court had misconceived the effect of the mandate, it might well be that the district court would correct him. But in this case he is doing precisely what the Supreme Court directed him to do, and this court will not interfere.

It follows, therefore, that the motion to quash or otherwise restrain the marshal from enforcing the levy on property late of Kortright is denied.