## GENTILE v. THE STATE.

CONSTITUTIONAL LAW.—PROTECTION OF FISH.—The act entitled "an act to provide for the protection of fish, defining the time in which they may be trapped, netted or seined, affixing the penalty for its violation, and declaring an emergency," approved *March* 9, 1867, (Acts 1867, p. 128,) is not embraced within any of the subjects specified in section 22, article 4, of the constitution of *Indiana*, upon which local legislation is prohibited.

SAME.—INTERPRETATION.—The exception in the act excluding the *Ohio* and *St. Joseph* rivers from its operation, does not bring the act within the prohibition against local legislation contained in section 23, article 4, of the consitution.

SAME.—The fact that, in many cases, local laws are necessary, because general ones cannot properly and justly be made applicable, is clearly implied in section 23, *supra.*

SAME.—It is for the legislature alone to judge whether a law, on any given subject, not enumerated in section 22, can be made applicable to the whole State.

SAME.—OVERRULED CASE.—The case of *Thomas* v. *The Board of Commissioners of Clay County*, 5 Ind. 4, is overruled on this point.

SAME.—LEGISLATIVE POWER.—The legislature of this State has the power, under the constitution, to pass laws for the preservation of fish by limiting the time and mode of taking them.

| | |
|---|---|
| 29 | 409 |
| 130 | 439 |
| 130 | 445 |
| 29 | 409 |
| 134 | 253 |
| 136 | 543 |
| 29 | 409 |
| 137 | 231 |
| 137 | 325 |
| 29 | 409 |
| 142 | 440 |
| 143 | 311 |
| 29 | 409 |
| 144 | 323 |
| 147 | 194 |
| 147 | 630 |
| 29 | 409 |
| 151 | 155 |
| 29 | 409 |
| 153 | 462 |
| 29 | 409 |
| 155 | 614 |
| 29 | 409 |
| f158 | 437 |
| 29 | 409 |
| e164 | 120 |
| 29 | 409 |
| 170 | 419 |

APPEAL from the *Marion* Criminal Circuit Court.

ELLIOTT, J.—*Gentile* was indicted under the act "to provide for the preservation of fish," &c., approved *March* 9, 1867, for seining fish in *White* river, in said county of *Marion*, on the 10th day of *October*, 1867. A motion to quash the indictment was made and overruled, to which a proper exception was taken. The defendant then pleaded not guilty. The issue was tried by the court, who found the defendant guilty, and assessed his fine at ten dollars. A motion in arrest was overruled, and judgment rendered on the finding. *Gentile* appeals.

The act upon which the indictment is based provides "that it shall be unlawful to trap, net, shoot or sein fish, in any of the lakes, rivers or small streams, within this State, for the period of two years from and after the taking effect of this act, and at all times thereafter between the first day

of *May* and the first day of *September* of each year; and any
person or persons found trapping, netting, shooting or
seining fish in violation of this act shall, upon conviction
thereof, be fined in any sum not exceeding twenty-five dol-
lars, nor less than five dollars: *Provided, however,* that the
penalties prescribed in this act shall not be enforced against
persons taking fish out of the *Ohio* and *St. Joseph* rivers."

It is urged by the counsel for the appellant that this act
is unconstitutional, and void, and, therefore, that the court
erred in refusing to quash the indictment.

The first objection urged to the validity of the act is,
that the exception, excluding the *Ohio* and *St. Joseph* rivers
from its operation, makes it a local and not a general law,
and that, as such, it is obnoxious to the provisions of the
22d and 23d sections of article 4 of the constitution of the
State.

The 22d section of the article named declares that "the
general assembly shall not pass local or special laws in any
of the following enumerated cases:" The section then
enumerates seventeen distinct subjects of legislation.

Section 23 is as follows: "In all the cases enumerated
in the preceding section, and in all other cases where a gen-
eral law can be made applicable, all laws shall be general
and of uniform operation throughout the State."

The act under consideration is not embraced within any
of the subjects specified in section 22, but it is insisted that
it is a case where a general law could readily be made ap-
plicable, and is therefore in conflict with section 23.

It is claimed by counsel that two *St. Joseph's* rivers are ex-
cluded by the exception; one rising in the State of *Michi-
gan* and running through the northern part of the counties
of *Elkhart* and *St. Joseph,* and thence returning into *Michi-
gan;* the other passing out of the State of *Ohio* into *Allen*
county, in this State, where, by its confluence with the *St.
Mary's,* the *Maumee* is formed.

The exception uses the name *St. Joseph* in the singular,

and thereby implies that but one river of that name was intended to be included. True, the word "rivers" is in the plural, but is properly so, as it relates both to the *Ohio* and *St. Joseph*. The river first referred to is known simply as the *St. Joseph's*, whilst the latter is named on the maps of the State in general use, the "*St. Joseph's of the Maumee.*" We therefore conclude that the former was alone intended to be included in the exception.

The southern boundary of *Indiana* only extends to the *Ohio* river at low water mark. *Stinson* v. *Butler*, 4 Blackf. 285; *Handly's Lessees* v. *Anthony*, 5 Wheat. 374; *Cowden* v. *Kerr*, 6 Blackf. 280. That river is not therefore within the territorial limits of this State, and the exception excluding it from the provisions of the act could not render the law a local one. Nor do we hold that the exclusion of the *St. Joseph* river makes the act local within the meaning of the 23d section of the 4th article of the constitution. That section was intended to prohibit the passage of any law applicable only to one or more counties, or other territorial subdivisions of the State, where a general law on the same subject could be made which would properly apply to the entire state. The act under consideration applies alike to all the citizens, and no recognized territorial subdivision of the state is excluded from its operation by the exception, and it can scarcely be deemed a local law in the sense of the constitutional prohibition referred to. But if it be a local law, still we are not prepared to hold that it is, for that reason, in conflict with the section of the constitution before named. It is declared by that section that only general laws, of uniform operation throughout the state, shall be passed, in all the cases enumerated in section 22, "and in all other cases where a general law can be made applicable." It must be borne in mind that the act under consideration does not come within any of the subjects enumerated in the 22d section, and hence, if embraced in the 23d, it must be by the latter clause, as being a case "where a general law can be made applicable." It is clearly implied by that sec-

tion, and we know it to be true in fact, that in many cases local laws are necessary, because general ones cannot, properly and justly, be made applicable. There are cases where a law would be both proper and necessary in a given locality or part of the state, where its subject is local, or where, from local facts, it is rendered necessary; but which, if made general, would either be inoperative in portions of the state, or from its inapplicability to such portions, would be injurious and unjust.

As the general assembly, then, have the power to pass local laws where general ones cannot be made applicable, and as the constitution does not declare, except in the cases enumerated in section 22, in what particular cases general laws can be made applicable, or designate the proper subjects of local legislation, who is to determine when a law may be local, or when a general law can be properly applied to the particular subject? Most unquestionably those who make the law are necessarily required, in its enactment, to judge and determine, from the nature of the subject, and the facts relating to it, whether it could properly be made general, and of uniform operation throughout the state. If a local law be enacted on a subject not enumerated in section 22, we must presume that, in the opinion and judgment of the legislative department, a general law on the given subject could not be made applicable. Is the determination and judgment of the legislature in such cases conclusive, or is it subject to review and reversal by the courts? The latter proposition was decided in the affirmative in the case of *Thomas* v. *The Board of Commissioners of Clay Co*, 5 Ind. 4, in which it was held that "an act to authorize the re-location of the seat of justice of the county of *Clay*" was in violation of the provision of the constitution now under discussion, and was therefore void. The correctness of that ruling may be seriously doubted. The reasoning upon which it is based is regarded as unsound, and does not, therefore, support the conclusion reached. It is there said that if the courts cannot review the judgment of the legis-

lature in such cases, " the 23d section has no validity, nor is there any reason why it should have a place in the constitution. It would impose no restriction upon the action of the legislature, nor confer any power which that body would not possess in the absence of such a provision."

The object of the provision was not to confer any power on the legislature, but to restrain that body in the exercise of an inherent power of sovereignty, which, in the absence of such a restriction, it would possess. But the restriction is not specific as to the particular cases to which it applies, and hence it requires the exercise of legislative judgment in determining the question of its application in each case as it may arise. It is nevertheless a restriction, binding upon the conscience of every member of the body, the application of which must be judged of and determined as cases are presented, under the oath (which all the members are required to take before entering upon their duties) to support the constitution of the state, and it cannot be presumed that the members of that body would willfully disregard either the restriction or their obligations to support it, in the enactment of laws. It is, therefore, an error to say that the restriction is of no validity unless the correctness of the legislative judgment is subject to revision by the courts. It is further said in that case, that " if that section permits the legislature to enact a special or local law *ad libitum,* in any case not enumerated, the principle involved would deprive this court of all authority to call in question the correctness of a legislative construction of its own powers under the constitution." But that provision does not involve any question of the power of the legislature to enact a law on any particular subject. It only involves the question of fact whether the subject of the act is such that a general law could be made applicable. It is a question which, as said before, the legislature must of necessity determine; and it may be pertinently asked, what possible benefit could arise from the power of the courts to call in question the correctness of such legislative decisions? We

are far from claiming that the legislature is omnipotent, but, on the other hand, we are not sure that the superior wisdom of the courts would, in such cases, enable them to judge more accurately than the legislature. The question is one which, in its very nature, peculiarly addresses itself to the legislative judgment, and if a local law be enacted, the reasons upon which the legislature adjudged that a general law could not be made applicable, however satisfactory they may appear to the members of that body, may not appear on the face of the law, and the courts are left in ignorance of them, and if permitted to review the legislative decision, must act upon such reasons and facts as may suggest themselves to the mind; and thus the legislature and courts would be liable to be brought into frequent conflict, to no beneficial purpose.

The decision in the case referred to is in conflict with other adjudications on a kindred subject, which seems to involve the same principle.

The constitution of 1816 contained this provision: "No act of the general assembly shall be in force until it shall have been published in print, unless in cases of emergency." Art. 1, sec. 28. Under this provision, laws enacted by the legislature were frequently declared to be in force from and after their passage, without any express declaration of emergency; and it was held by this court, in *Carpenter* v. *Montgomery*, 7 Blackf. 415, that the legislature must necessarily be the judges of the existence of the emergency, "and when they deem it to exist, they have the right to declare a statute in force from and after its passage."

So our present constitution provides that "no act shall take effect until the same shall have been published and circulated in the several counties of this State by authority, except in case of emergency, which emergency shall be declared in the preamble or in the body of the act." Sec. 28, art. 4. The practice, as to the form of declaring an emergency, under this provision, has not been uniform. In some instances the reason for the emergency is stated,

but in others it is simply declared that an emergency exists. It cannot be presumed that an emergency exists in all cases, yet it has never been claimed that the legislative declaration of an emergency was not conclusive of its existence, or that the courts could review the reason for making it. This provision of the constitution is equally as positive in its terms, and would seem to be quite as important, as that declaring that local laws shall not be passed where general ones can be made applicable. Both involve the same principle in requiring the exercise of legislative judgment, and why should not the same rule of conclusiveness apply to these alike?

For the reasons stated, we are led to the conclusion that it is for the legislature alone to judge whether a law on any given subject, not enumerated in section 22, can be made applicable to the whole State.

It is also insisted that the act in question is in violation of the vested rights of many of the citizens of the State, and is, for that reason, unconstitutional.

The proposition is, that the legislature "has no power to pass a law denying or abridging the right of the people of the State to fish in their own waters, and upon their own soil, at pleasure;" that land owners derive titles from the *United States*, and their grants include all unnavigable streams of water passing over their lands, with the exclusive right to fish therein, within their own boundaries; and that where the land bounds on such a stream, the stream is the common property of the adjoining proprietors, who have the exclusive right of fishing. And it is claimed that this right to fish may be exercised at all times, at the will of the land owner, and is not subject to be controlled, restrained or abridged by the legislature.

The case of *The People* v. *Platt et al.*, 17 John. 195, is cited by the appellant's counsel, and claimed to be directly in 'point and decisive of the question presented here. There the defendants, *Platt* and others, were indicted for

keeping a public nuisance, by maintaining a dam across the *Saranac* river, without providing therein a proper slope, so that salmon might easily pass over into the waters above the dam, as required by a statute of that State for the preservation of fish in certain waters. The defendants derived title to the mill property, with its appurtenances, including the dam, pond and the lands on both sides of the *Saranac*, under a patent to *Zephaniah Platt*, dated in 1784, for a tract of land bounded on the east by *Lake Champlain*, and extending west on both sides of the *Saranac* river, being seven miles square. The river was not navigable. The dam was erected more than thirty years before the indictment was found, and many years before the passage of the act under which the defendants were prosecuted. It was held that by the patent, the whole river, within the territory granted, passed to the patentee and became his exclusive property, which necessarily included the exclusive right of fishing in that part of the river; that the public had no right to fish in the river within the bounds of the grant. Nor was it in the power of the legislature to require a slope to be made in the dam so as to admit the passage of salmon, or, on default thereof, to authorize the abatement of the dam as a nuisance.

It was also held by the same court, in *Hooker* v. *Cummings*, 20 John. 91, that, in case of a fresh water river, "in which the tide does not ebb and flow, and which is not therefore an arm of the sea, he who owns the soil has, *prima facie*, the right of fishing, and if the soil on both sides be owned by an individual, he has the sole and exclusive right," and the fact that such river is navigable and subject to the public servitude, for the passage of boats, is not inconsistent with the exclusive right of fishery by the owner of the soil.

These cases only decide that there is no public "right of fishery" in such streams, and that, as between the owner of the stream, or the soil over which it passes, and the public, the right of fishing is exclusively in the former. They do not sustain the claim of the appellant's counsel, that the

right to fish, both as to time and mode, may be exercised at will by the owner of the soil, and is not subject to be controlled, restrained or abridged by the legislature. Nor do they at all deny the power of the legislature to pass laws for the preservation of fish by limiting the time or mode of taking them. On the contrary, it is said in the case last cited, that "the legislature have confessedly the right of regulating the taking of fish in private rivers, and do, every year, pass laws for that purpose, as to rivers not navigable in any sense, and which are unquestionably private property."

The proposition of the appellant's counsel is erroneous, in confounding the exclusive right of the owner of the stream to fish therein, with the right of property in the fish before they are taken. But fish are *feræ naturæ*, and as far as any right of property in them can exist, it is in the public, or is common to all. No individual property in them exists until they are taken and reduced to actual possession. 2 Black. Com. 392. They are natives of the water; it is there they generate and live and grow, and no individual property in them can attach whilst they remain there free. But, as they are valuable for food, the public has an interest in their protection and growth.

In the states bounding on the seaboard, where valuable fish pass, in great numbers, up the rivers and streams that flow into the sea, fisheries constitute a valuable interest both to the public and to individuals, and in many, if not all, of those states, their production and growth are stimulated and protected by penal statutory prohibitions against taking them during certain portions of the year, and especially during the spawning period.

An examination of those laws will show that many of them are more stringent than our statute, but we are not aware that it has ever been claimed that they are in conflict with the constitutions of those states, as being in violation of vested rights.

The same principle precisely is involved in the numerous game laws of this and other states, the constitutionality of which, we believe, has never been seriously controverted.

Whether the fish inhabiting most of the water courses of this State are sufficiently numerous or valuable to require or justify the enactment of this statute, is a question for the legislature alone, and with which the courts have nothing to do. The question presented here is, had the legislature the power, under the constitution, to enact the law, and if so, then if it be found impolitic, the remedy is by an application to the legislature for its repeal. While it remains the law, it is the duty of the courts to administer it as they find it.

We find nothing in the constitution restricting the power of the legislature over the subject, and therefore hold the statute constitutional.

This being the only question in the case, the judgment is affirmed, with costs.

*M. M. Ray, J. W. Gordon* and *W. March,* for appellant.

*D. E. Williamson,* Attorney General, for the State.