

IN THE

# Court of Appeals of Indiana

Smith & Wesson Corp., et al.,

*Appellants-Defendants*



FILED

Dec 29 2025, 9:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

City of Gary, Indiana,

*Appellee-Plaintiff*

---

December 29, 2025

Court of Appeals Case No.
24A-CT-2381

Appeal from the Lake Superior Court

The Honorable John M. Sedia, Judge

Trial Court Cause No.
45D01-1211-CT-233

---

**Opinion by Chief Judge Altice**
Judges Pyle and DeBoer concur.

**Altice, Chief Judge.**

## Case Summary

[1] More than a quarter century ago, the City of Gary (the City) sued various manufacturers, wholesalers, and retailers in the firearms industry (Defendants) for injunctive relief and money damages for the harm allegedly caused by, among other things, the unlawful marketing and distribution of handguns. After three prior appeals, the most recent in 2019, some of the City's claims for public nuisance and negligence survived the pleading stage; other claims were found to be barred by Ind. Code § 34-12-3-3 (the Immunity Statute), which was amended in 2015 to make it retroactive to a date just before the City's lawsuit against Defendants began. *See City of Gary v. Smith & Wesson Corp.*, 126 N.E.3d 813 (Ind. Ct. App. 2019) (*Gary 3*), *trans. denied*.

[2] While the case remained pending in the trial court on remand after *Gary 3*, the Indiana General Assembly passed House Enrolled Act No. 1235 (HEA 1235) and declared it an emergency, making it effective immediately upon the Governor's signature on March 15, 2024. *See* Ind. Pub. L. 170-2024. This new legislation is codified at I.C. § 34-12-3.5-3 (the Reservation Statute) and provides, with few exceptions not applicable here, that "only the state of Indiana may bring or maintain an action by or on behalf of a political subdivision against a firearm or ammunition manufacturer, trade association, seller, or dealer[.]"

[3] Based on the Reservation Statute, Defendants again moved for judgment on the pleadings. The City argued in opposition that the Reservation Statute

constitutes unconstitutional special legislation and violates principles of separation of powers and open courts. The State intervened to defend the Reservation Statute's constitutionality.

[4] After briefing and oral argument, the trial court denied the motions for judgment on the pleadings. While upholding the constitutionality of the Reservation Statute, the trial court determined that its retroactive application to this long-running case "would violate years of vested rights and constitutional guarantees" and would constitute a "manifest injustice." *Appellants' Appendix Vol. 2* at 125.

[5] Defendants bring an interlocutory appeal from this order. We address the following restated issues:

1. Is the Reservation Statute unconstitutional special legislation?

2. Does the Reservation Statute violate separation of powers or the Open Courts Clause?

3. Does the City have vested rights in the pending lawsuit that would prevent application of the Reservation Statute to this case?

[6] We reverse.

## Facts & Procedural History[1]

The City filed its original complaint against Defendants in August 1999 and later amended the complaint in 2001. The City was particularly concerned with sales of handguns to illegal buyers through intermediaries in straw purchases, leading to increased crime and creating substantial costs to the public. *See City of Gary v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1228 (Ind. 2003) (*Gary 1*) (providing detailed account of the City's allegations). Summarized, the amended complaint asserted claims for public nuisance against all Defendants (Count I), negligent distribution, marketing, and sales of handguns against all Defendants (Count II), and negligent design against the manufacturer Defendants (Count III).

### Three Prior Appeals & Relevant Legislative Enactments

The first appeal began after the trial court dismissed all the City's claims based on Ind. Trial Rule 12(B)(6) for failure to state a claim. This appeal reached the Indiana Supreme Court in 2003. *Gary 1*, 801 N.E.2d 1222. Applying negligence and public nuisance law, the Supreme Court upheld each count of the complaint. Regarding public nuisance, the Court determined in part: compliance with regulatory statutes did not insulate Defendants from liability for a harmful activity – "an activity can be lawful and still be conducted in an unreasonable manner so as to constitute a nuisance"; and the public nuisance

---

[1] On the City's motion, we held oral argument on December 9, 2025, in our courtroom in Indianapolis.

statute, Ind. Code § 32-30-6-7, expressly authorizes cities to seek relief against public nuisances resulting in authority to bring such suits under the Home Rule Act, Ind. Code Chap 36-1-3. *Gary 1*, 801 N.E.2d at 1234-35, 1238-40. The Court recognized that "there may be major, perhaps insurmountable, obstacles to establishing some or all of the damage items the City cites," but it found that was not a basis to dismiss the complaint before discovery refined the issues. *Id*. at 1240-41. The Court concluded its analysis of the public nuisance claim as follows:

> In sum, the City alleges that all defendants intentionally and willingly supply the demand for illegal purchase of handguns. The City alleges that the dealer-defendants have participated in straw purchases and other unlawful retail transactions, and that manufacturers and distributors have intentionally ignored these unlawful transactions. The result is a large number of handguns in the hands of persons who present a substantial danger to public safety in the City of Gary. Taken as true, these allegations are sufficient to allege an unreasonable chain of distribution of handguns sufficient to give rise to a public nuisance generated by all defendants.

*Id*. at 1241 (citations omitted). The Court also upheld the negligence claims against Defendants' arguments based on lack of duty and problems of causation and damages but recognized the difficulty the City might face in proving proximate cause and damages at trial.

[9] After the case returned to the trial court, Defendants unsuccessfully moved to dismiss the action in 2005, arguing that the federal Protection of Lawful

Commerce in Arms Act (the PLCAA),[2] enacted that year, barred the City's complaint. The PLCAA bars "a qualified civil liability action" from being brought in federal or state courts and requires the immediate dismissal of any pending actions. 15 U.S.C. § 7902. "Qualified civil liability action" is generally defined to include an action brought against a manufacturer or seller of a firearm "for damages, punitive damages, injunctive or declaratory relief, … or other relief, resulting from the criminal or unlawful misuse of a [firearm] by the person or a third party[.]" 15 U.S.C. § 7902(5)(A). There are exceptions to this general definition, notably the following:

> [A]n action in which a manufacturer or seller of a [firearm] **knowingly violated a State or Federal statute applicable to the sale or marketing of the product**, and the violation was a proximate cause of the harm for which relief is sought, including–
>
>> (I) any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the [firearm], or aided, abetted, or

---

[2] The findings expressly set out in the PLCAA state an intent to address lawsuits commenced across the country against manufacturers, distributors, and dealers of firearms, seeking money damages and other relief for the harm caused by the misuse of firearms by third parties, including criminals. 15 U.S.C. § 7901(a)(3). Congress found that U.S. businesses engaged in interstate and foreign commerce through "the lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms … are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products … that function as designed and intended." 15 U.S.C. § 7901(a)(5). Congress noted that firearms are heavily regulated by federal, state, and local laws, and found that such lawsuits improperly attempt to use the judicial branch to circumvent the legislative branch of government. 15 U.S.C. § 7901(a)(4) and (8). The enumerated purposes of the PLCAA included, among others, to preserve citizens' access to firearms for all lawful purposes and to prohibit actions against firearms manufacturers, distributors, and dealers "for the harm solely caused by the criminal or unlawful misuse of firearm products … by others when the product functioned as designed and intended." 15 U.S.C. § 7901(b)(1) and (2).

> conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a [firearm]; or
>
> (II) any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a [firearm], knowing, or having reasonable cause to believe, that the actual buyer … was prohibited from possessing or receiving a firearm or ammunition under [federal law].

15 U.S.C. § 7902(5)(A)(iii)(emphasis supplied). This has been referred to as the "predicate exception" because it requires an underlying or predicate statutory violation. *Smith & Wesson Corp. v. City of Gary*, 875 N.E.2d 422, 430 (Ind. Ct. App. 2007) (*Gary 2*), *trans. denied*.

[10] The trial court denied the motion to dismiss, concluding that the PLCAA is unconstitutional, and Defendants appealed. In *Gary 2*, this court affirmed the trial court but on different grounds, holding that the City's claims fall under the predicate exception and therefore are not barred by the PLCAA. *Id.* at 432-33 (observing that the City's complaint alleged illegal and unlawful conduct/sales by Defendants and the knowing violation of Indiana statutes – both the public nuisance statute and regulatory statutes – applicable to the sale or marketing of firearms). That is, based on the City's allegations of unlawful conduct by Defendants, "we [could not] say that [Defendants] are engaged in the '**lawful** design, manufacture, marketing, distribution, importation, or sale to the public of firearms or ammunition products' … or that the harm 'is solely caused by

others.'" *Id*. at 433 (quoting 15 U.S.C. § 7901(a)(5) (emphasis added by *Gary 2* court) and (6)). The Supreme Court denied transfer in *Gary 2* in January 2009, so the matter returned to the trial court once again.

While the first appeal made its way through the appellate courts, the Indiana General Assembly enacted the Immunity Statute, which became effective in 2001. The Immunity Statute, at that time, provided in part, with certain exceptions not relevant here, that "a person may not bring" an action against a firearms manufacturer or seller for:

> (1) recovery of damages resulting from, or injunctive relief or abatement of a nuisance relating to, the **lawful**:
>
> > (A) design;
> >
> > (B) manufacture;
> >
> > (C) marketing; or
> >
> > (D) sale;
>
> of a firearm or ammunition for a firearm; or
>
> (2) recovery of damages resulting from the criminal or unlawful misuse of a firearm or ammunition for a firearm by a third party.

I.C. § 34-12-3-3 (emphasis added). In 2015, the General Assembly amended the Immunity Statute to provide that a person could not "bring **or maintain**" such an action and made the amendment retroactive to August 26, 1999. *See* Ind. Pub. L. 106-2015, § 4.

[12]     Later in 2015, Defendants filed a motion for judgment on the pleadings. They asserted that the Immunity Statute, as amended, compelled dismissal of the City's claims. Defendants also renewed their argument for dismissal pursuant to the PLCAA. In response, the City asserted that the Immunity Statute and the PLCAA were inapplicable and unconstitutional. In January 2018, the trial court granted Defendants' motion and dismissed the action. Without addressing the constitutional challenges, the trial court determined that Defendants were entitled to immunity under both the Immunity Statute and the PLCAA. The City appealed, and the State intervened to defend the constitutionality of the amendment to the Immunity Statute.

[13]     In *Gary 3*, this court rejected the City's argument that the amendment was an unconstitutional special law. 126 N.E.3d at 826 (concluding, without deciding, that even if a special law, the amendment is constitutionally permissible because it ensures that the Immunity Statute applies uniformly across the state and to the one case previously remaining outside its reach). We also held that the City, as an agent subject to control of the State, could not challenge the amendment on federal due process grounds. *Id*. at 826-27. And we recognized in dicta that a party's property right in a particular cause of action does not vest until a final unreviewable judgment is obtained. *Id*. at 826 n. 14.

[14]     After disposing of the constitutional challenges, this court applied the language of the Immunity Statute to the City's claims. Count III – the negligent design claim – did not allege unlawful conduct, so we affirmed dismissal of this count. *Id*. at 831-32. We reversed the dismissal of Counts I and II, holding that they

sufficiently alleged unlawful conduct by Defendants in the sale, marketing, and distribution of handguns, and the Immunity Statute does not apply to such unlawful conduct.[3] *Id.* at 828-31. We agreed with the trial court, however, that the City was barred from seeking damages resulting from the criminal or unlawful misuse of a firearm by a third party. *Id.* at 827 (citing subsection 3(2) of the Immunity Statute). Further, with respect to the PLCAA, we determined that *Gary 2* was the law of the case and reaffirmed our holding that the PLCAA does not bar the City's claims. *Id.* at 832-34.

[15] The Supreme Court denied transfer in November 2019, and the case returned to the trial court. Over the next several years, the trial court addressed discovery disputes between the parties. In June 2023, the trial court vacated its earlier discovery sequencing order and granted the City broad access to discovery. *See Appellee's Appendix Vol. 2* at 116-120 (June 2023 discovery order). In November 2023, the trial court denied motions to quash various subpoenas issued by the City against a retailer defendant and non-parties.

**Passage of the Reservation Statute**

[16] On January 9, 2024, Representative Chris Jeter introduced a bill in the Indiana House of Representatives that became HEA 1235. An emergency was declared

---

[3] The parties agreed in *Gary 3* that unlawful conduct, in this context, is conduct that violates a statute, ordinance, or regulation. *Id.* at 828.

for HEA 1235, and it went into effect upon the Governor's signature on March 15, 2024.

[17]    This new law is codified in the Reservation Statute, which provides:

> (a) Notwithstanding [the Immunity Statute] or any other law, only the state of Indiana may bring or maintain an action by or on behalf of a political subdivision against a firearm or ammunition manufacturer, trade association, seller, or dealer, concerning the:
>
>> (1) design;
>>
>> (2) manufacture;
>>
>> (3) import;
>>
>> (4) export;
>>
>> (5) distribution;
>>
>> (6) advertising;
>>
>> (7) marketing;
>>
>> (8) sale; or
>>
>> (9) criminal, unlawful, or unintentional use;
>
> of a firearm, ammunition, or a component part of a firearm or ammunition.
>
> (b) Except as provided in subsection (c), … a political subdivision may not independently bring or maintain an action described in subsection (a).
>
> (c) This section does not prohibit a political subdivision from bringing an action against a firearm or ammunition manufacturer, seller, or dealer:

> (1) alleging the breach of a contract or warranty as it relates to a firearm or ammunition purchased by the political subdivision; or
>
> (2) to enforce a generally applicable zoning or business ordinance that applies to a firearm or ammunition manufacturer, seller, or dealer to the same degree as other similar businesses.

I.C. § 34-12-3.5-1 provides that the Reservation Statute "applies to an action or suit filed by a political subdivision before, after, or on August 27, 1999."

**Motions for Judgment on the Pleadings & the Trial Court's Order**

[18] Between March 18 and May 8, 2024, Defendants filed motions for judgment on the pleadings based on the Reservation Statute. In opposing the motions, the City argued that the Reservation Statute violates the Indiana Constitution because it is special legislation. Additionally, in reference to separation of powers and open courts, the City conceded below that it was "not making a separate due process claim" but rather simply observing that its special legislation challenge was also "informed by principles of separation of powers and open courts." *Transcript* at 27.

[19] The trial court held a hearing on August 8, 2024, and issued an order four days later denying the motions. Though rejecting the City's constitutional challenges, the trial court determined that the Reservation Statute could not be applied retroactively to this case, explaining:

> This lawsuit, in one form or another, has been pending for twenty-five years. The General Assembly can prospectively cure

what it perceived as a prior defect or mischief by requiring that all future actions against gun manufacturers by political subdivisions be brought on their behalf by the Attorney General. It cannot end this lawsuit which the appellate courts of this state have found to be permitted by prior statute. To do so would violate years of vested rights and constitutional guarantees set forth so eloquently in the City's Memorandum of Law. To avoid manifest injustice, the substance of this lawsuit must be taken to its conclusion.

*Id*. at 125 (cleaned up).[4]

[20] At the request of Defendants, the trial court certified its order for interlocutory appeal. This court accepted jurisdiction on November 1, 2024.

## Standard of Review

[21] A motion for judgment on the pleadings under Ind. Trial Rule 12(C) should be granted only where it is clear from the face of the complaint that under no circumstances could relief be granted. *KS&E Sports v. Runnels*, 72 N.E.3d 892, 898 (Ind. 2017). On appeal, our review is de novo. *Id*. "We only examine the pleadings and any facts of which we may take judicial notice, with all well-

---

[4] The trial court also noted sua sponte that the Reservation Statute "raises potential" real-party-in-interest issues under Ind. Trial Rule 17(A). *Appellants' Appendix Vol. 2* at 126. The City does not pursue this line of reasoning on appeal. Further, as the State observes, there is no real-party-in-interest issue here because "[a] party authorized by statute to maintain an action is a real party in interest" and the Reservation Statute authorizes the State, and only the State, to bring and maintain actions such as the City's. *State v. Rankin*, 294 N.E.2d 604, 606 (Ind. 1973).

pleaded material facts alleged in the complaint taken as admitted." *Kaur v. Amazon, Inc.*, 243 N.E.3d 1161, 1165 (Ind. Ct. App. 2024), *trans. denied* (2025).

[22] Likewise, we review statutory and constitutional questions de novo. *Morales v. Rust*, 228 N.E.3d 1025, 1033 (Ind. 2024), *cert. denied*. We also remain mindful that "laws come before us clothed with the presumption of constitutionality unless clearly overcome by a contrary showing." *Holcomb v. Bray*, 187 N.E.3d 1268, 1277 (Ind. 2022) (cleaned up). "The party challenging the constitutionality of a statute bears the high burden of overcoming this presumption and establishing a constitutional violation, and any doubts are resolved in favor of the legislature." *Paul Stieler Enters., Inc. v. City of Evansville*, 2 N.E.3d 1269, 1273 (Ind. 2014).

## Discussion & Decision

[23] There is no dispute among the parties that, if applicable, the Reservation Statute effectively terminates the City's lawsuit. The City argues, however, that there should be "limits on the Legislature's ability to reach out and quash a particular ongoing lawsuit" and that "a legislative end-run around existing litigation – cherry-picking a plaintiff with a stated plan to abandon the case – presents an unprecedented challenge to the independence of Indiana's judiciary." *Appellee's Brief* at 26. The City asserts that the Reservation Statute is "manifestly offensive to basic principles of fairness that are woven into the Indiana Constitution." *Id*. Pointing to the three prior appeals, the City suggests that these decisions should not be allowed to be "overridden by legislative fiat." *Id*. at 27.

Before reaching the constitutional issues at hand, we observe that the City brought and maintained this action well before the passage of the Reservation Statute, and thus this case involves retroactive application. *See Church v. State*, 189 N.E.3d 580, 588 (Ind. 2022) (holding that statute regulating depositions of alleged child victims of sex offenses was being applied prospectively because defendant had not sought to depose the child until after the statute went into effect but observing that there would be retroactive application if he had sought to depose the child prior to that time). The General Assembly, however, expressly authorized retroactive application here. *See* I.C. § 34-12-3.5-1 (making the Reservation Statute applicable to "an action or suit filed by a political subdivision before, after, or on August 27, 1999").

"Courts must generally honor the legislature's choice to make a law retroactive unless doing so would violate a vested right or constitutional guarantee." *Rokita v. Bd. of Sch. Comm'rs for City of Indianapolis*, 262 N.E.3d 873, 885 (Ind. Ct. App. 2025).

### 1. The Reservation Statute is not unconstitutional special legislation.

Article 4, Section 22 of the Indiana Constitution prohibits "local or special" legislation on various enumerated topics, none of which is applicable here; Article 4, Section 23 then adds "a residual demand for 'general' legislation: 'In all the cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State.'" *Mun. City of S. Bend v. Kimsey*, 781 N.E.2d 683, 687 (Ind. 2003) (quoting Article 4, Section 23).

In *Kimsey*, our Supreme Court discussed the origins and purpose of these constitutional provisions, explaining:

> Their purpose is to prevent state legislatures from granting preferences to some local units or areas within the state, and thus creating an irregular system of laws, lacking state-wide uniformity. This irregularity is not in itself the only perceived evil. In the view of the proponents of these provisions, if special laws are permitted, the result is perceived to be a situation in which it becomes customary for members of the legislature to vote for the local bills of others in return for comparable cooperation from them (a practice often termed "logrolling"). In simple terms, these anti-logrolling provisions are grounded in the view that as long as a law affects only one small area of the state, voters in most areas will be ignorant of and indifferent to it. As a result, many legislators will be tempted, some would say expected, to support the proposals of the legislators from the affected area, even if they deem the proposal to be bad policy that they could not support if it affected their own constituents.
>
> In fact, the drafters of the 1851 Indiana Constitution saw one of their principal challenges to be reining in a "large and constantly increasing number" of special laws….

*Kimsey*, 781 N.E.2d at 685-86 (cleaned up); *see also Gentile v. State*, 29 Ind. 409, 411 (1868) ("[Article 4, Section 23] was intended to prohibit the passage of any law applicable only to one or more counties, or other territorial subdivisions of the State, where a general law on the same subject could be made which would properly apply to the entire state").

The terms "general law" and "special law" have widely understood meanings:

> A statute is "general" if it applies "to all persons or places of a specified class throughout the state." Black's Law Dictionary 890 (7th ed. 1999). A statute is "special" if it "pertains to and affects a particular case, person, place, or thing, as opposed to the general public." *Id*.

*Kimsey*, 781 N.E.2d at 689; *see also State v. Hoovler*, 668 N.E.2d 1229, 1233 (Ind. 1996) ("A local or special statute, as the words imply, is one that – unlike a statute of general applicability – applies not to the entire state but to a particular area, person, class of persons, or set of circumstances exclusively.").

[29] In analyzing a law under Article 4, Section 23, we first determine whether the law is general or specific. If we determine that a law is a special law, we then determine whether it is nevertheless constitutionally permissible, which involves looking to whether it is amenable to a general law of uniform operation throughout the State. *See State v. Buncich*, 51 N.E.3d 136, 141 (Ind. 2016); *Kimsey*, 781 N.E.2d at 690. To be constitutional, a special law must be reasonably related to inherent characteristics of the affected locale and apply wherever the justifying characteristics are found. *Kimsey*, 781 N.E.2d at 692-93; *see also City of Hammond v. Herman & Kittle Props., Inc.*, 119 N.E.3d 70, 74 (Ind. 2019) (holding special law unconstitutional where there was no link between the cities' alleged unique characteristics and the special treatment afforded them).

[30] Turning back to the first step in the analysis, while a law might be general in that it does not directly refer to a particular locality, we look deeper to determine whether it applies generally throughout the state. *See Kimsey*, 781

N.E.2d at 691 ("[A] statute with a population category is a special law if it is designed to operate upon or benefit only particular municipalities and thus is essentially no different than if the statute had identified the particular municipalities by name.") (internal quotation marks omitted); *see also Alpha Psi Chapter of Pi Kappa Phi Fraternity, Inc. v. Auditor of Monroe Cnty.*, 849 N.E.2d 1131, 1137 (Ind. 2006) ("It is difficult to imagine a piece of legislation more 'special' than Section 44, which applies only to: (1) fraternities, (2) affiliated with Indiana University, (3) who were previously granted property tax exemptions, but (4) who have paid property tax in two specified years because of a failure to file an exemption"; taken together, these requirements identified only three fraternities at Indiana University).

> In sum, if there are characteristics of the locality that distinguish it for purposes of the legislation, and the legislation identifies the locality, it is special legislation. The identification of the locality may be by name ("Tippecanoe County"), by the characteristic that justifies special legislation (a unique Superfund liability), or otherwise (population parameters that include only the locality).

*Kimsey*, 781 N.E.2d at 692.[5]

---

[5] In *Kimsey*, the Supreme Court held that the law constituted special legislation because its "population classification served no purpose other than to identify St. Joseph County." *Id*. at 693. The Court also noted "circumstances surrounding the enactment" of the law that led to the conclusion that this was special legislation: the bill was introduced by a Representative from St. Joseph County, sponsored in the Senate by a Senator whose district included St. Joseph County, declared an emergency, and only St. Joseph County fell within the population parameters of the law at the time. *Id*.

In *Holcomb v. City of Bloomington*, the Supreme Court addressed a law that it found singled out "Bloomington's – and only Bloomington's – proposed annexation." 158 N.E.3d 1250, 1255 (Ind. 2020). The legislature achieved this purpose by strictly limiting applicability of the law to certain annexation ordinances introduced during a short window of time, so that it would apply to Bloomington's proposed annexation alone. *Id*. The Court held that the special law was unconstitutional:

> In short, there are no unique circumstances of Bloomington's proposed annexation that warrant the special treatment – meaning that a general law could be made applicable. If the legislature were truly concerned with the pace and mood of Bloomington's proposed annexation or Bloomington's use of remonstrance waivers, that concern would have applied equally across Indiana. **But the legislature did not pass a law prohibiting such activity by every municipality in the state. Instead, it singled out Bloomington.** Under the circumstances here, that special treatment doled out by Section 11.8 is unconstitutional.

*Id*. at 1266 (cleaned up) (emphasis added). In contrast, here, the legislature did precisely what the Supreme Court recommended in *Holcomb* to make a law general – prohibited an activity by every political subdivision in the state.

[32] We agree with Defendants and the State that the Reservation Statute is a general law. It does not single out the City (or its lawsuit) by name or by unique characteristic (such as by population parameters). It contains no classification of political subdivisions at all. Rather, the Reservation Statute bars any political subdivision anywhere in the state from independently bringing or maintaining a

covered action, regardless of when the action was or is filed. A plain reading of the statute shows statewide application and the mere fact that only one political subdivision – the City – is currently maintaining such an action does not suggest otherwise.[6]

[33] The City likens the Reservation Statute to the special laws at issue in *Alpha Psi* and *Kimsey*. But in those cases, the laws contained classifications that limited their reach within the state. The law in *Kimsey* contained population parameters, which applied only to St. Joseph County at the time, and the Supreme Court found that such was a special law because "the population classification served no purpose other than to identify St. Joseph County." *Kimsey*, 781 N.E.2d at 693. Similarly, the law in *Alpha Psi* expressly applied only to fraternities affiliated with Indiana University who were previously granted property tax exemptions but who paid taxes in two specified years because of a failure to file an exemption. *Alpha Psi*, 849 N.E.2d at 1137. This narrowly defined class brought only three Bloomington fraternities within its orbit for special treatment and excluded all other property-owning fraternities

---

[6] We reject the City's invitation to ignore the apparent statewide reach of the statute by looking to individual statements of a legislator or the Attorney General. *See* Ind. Code § 2-5-1.1-15 (providing that audio or video coverage of legislative activities "does not constitute an expression of the legislative intent, purpose, or meaning of an act enacted or resolution adopted by the general assembly" unless such content is "incorporated by a bill contemporaneously enacted by the general assembly"); *McNeil v. Anonymous Hosp.*, 219 N.E.3d 789, 799 (Ind. Ct. App. 2023) ("Indiana does not recognize audio or video coverage of legislative activities as evidence of legislative intent.") (citing I.C. 2-5-1.1-15), *trans. denied* (2025*); see also A Woman's Choice-E. Side Women's Clinic v. Newman*, 671 N.E.2d 104, 110 (Ind. 1996) ("In interpreting statutes, we do not impute the opinions of one legislator, even a bill's sponsor, to the entire legislature unless those views find statutory expression.).

across the state, leading the Supreme Court to observe: "It is difficult to imagine a piece of legislation more 'special[.]'" *Id*. Conversely, the Reservation Statute does not define a narrow classification that limits its reach within the state.

[34] We also agree with Defendants that the lack of temporal restrictions ensures uniform application across the state by "simultaneously avoiding a special exception for the City of Gary's lawsuit, while also foreclosing future attempts by other political subdivisions to bring similar claims against members of the firearms industry." *Appellants' Brief* at 40; *see also State's Reply Brief* at 9 (noting that application to any action filed before, after, or on August 27, 1999 is no limit at all and simply ensures that the law applies uniformly across the state); *Cf. Gary 3*, 126 N.E.3d at 826 (holding that even if the amendment to the Immunity Statute was a special law, it was constitutional because it ensured uniform applicability across the state "by specifically applying the statutory immunity to the one case remaining outside its reach – a case to which the law undoubtedly could have applied in the first place").

[35] Finally, in the special law context, we address the City's assertion that there is nothing unique about political subdivisions that justifies prohibiting them from suing firearms dealers or manufacturers. This assertion, which seems to recognize that all political subdivisions are treated equally under the Reservation Statute, is a clear and unexplained pivot from the City's earlier argument that the law is special because it only applies to the City. Leaving this curious contradiction aside, we simply observe that political subdivisions are indeed unique as compared to private citizens, as it has long been understood

that a city "serves but as an agency or instrumentality in the hands of the legislature to carry out its will in regard to local governmental functions and internal concerns." *Schneck v. City of Jeffersonville*, 52 N.E. 212, 214 (Ind. 1898); *see also* Ind. Code § 36-1-3-5(a) (conferring power to municipalities under the Home Rule Act "to the extent that the power: (1) is not expressly denied by the Indiana Constitution or by statute; and (2) is not expressly granted to another entity.").

[36] In sum, the General Assembly determined that the public interest would be served by denying political subdivisions the power to independently bring or maintain certain lawsuits against members of the firearms industry and effectuated this policy by enacting the Reservation Statute and making it broadly applicable, retroactively and prospectively, throughout the state.[7] Uniform application of this policy could not be achieved unless the Reservation Statute applied to all such lawsuits brought or maintained by political subdivisions, including this one. The City has failed to establish that the Reservation Statute is an unconstitutional special law.

---

[7] In *KS&E Sports*, the Supreme Court observed: "One explanation [for the Immunity Statute] may be that the legislature, like Congress when it enacted the PLCAA, perceived that recent lawsuits against the firearms industry threatened its stability and jeopardized the continued availability of firearms even to law-abiding citizens wishing to exercise their Second Amendment rights." 72 N.E.3d at 906-07; *see also City of Evansville v. Magenheimer*, 37 N.E.3d 965, 967 (Ind. Ct. App. 2015) ("In 2011, our legislature determined that the public interest would be best served by denying local governments the power to regulate firearms. Indiana Code chapter 35-47-11.1 was passed to effectuate this new policy."). Defendants assert that the Reservation Statute extends these same public policy objectives and seeks to ensure a uniform set of standards for members of the firearms industry that are consistently enforced by the State throughout the state.

## 2. The City failed to establish a separation of powers or open courts violation.

Although the City conceded below that it was not asserting independent violations of these constitutional provisions, the parties address them on appeal. Accordingly, we will do the same.

### 2.1 Separation of Powers Doctrine

The Indiana Constitution commands that each branch of state government respect the constitutional boundaries of the coordinate branches. *See Rokita v. Tully*, 235 N.E.3d 189, 198 (Ind. Ct. App. 2024) (citing Article 3, Section 1 of the Indiana Constitution, which prohibits each branch from "exercis[ing] any of the functions of another, except as in this Constitution expressly provided"), *trans. denied*.

The City asserts: "The Legislature's attempt here to quash the current lawsuit, after multiple [appellate decisions] rebuffing Defendants' efforts to do so, is precisely the type of legislative appropriation of judicial power that the separation of powers doctrine proscribes."[8] *Appellee's Brief* at 44. And it asserts

---

[8] At multiple points, the City broadly states that its legal claims have been sustained three times on appeal. These statements are misleading, as the prior appeals did not address the substantive merits of the claims beyond the pleading stage. Further, in *Gary 1* the Supreme Court noted pessimism regarding the City's ultimate ability to prove damages and proximate cause. And in *Gary 3*, applying the amendment to the Immunity Statute, this court narrowed the City's claims and damages that it could seek. The claims that survived after *Gary 3* did so under the notice pleading standard.

that the new law was "designed to undercut the trial court's authority by rendering meaningless the court's outstanding discovery orders." *Id*. at 50.

[40] Defendants and the State aptly respond that while the legislature cannot interfere with the discharge of judicial duties or set aside a final judgment of a court, the separation of powers doctrine does not preclude the application of new legislation to cases still pending in the trial court or on appeal. *See Tully*, 235 N.E.3d at 199 ("[T]he court must give effect to the legislature's latest enactment, even when that has the effect of overturning a judgment of a lower court" unless the case reached "finality – meaning no further appeal may be taken"); *cf. Bank Markazi v. Peterson*, 578 U.S. 212, 229 (2016) ("Congress may indeed direct courts to apply newly enacted, outcome-altering legislation in pending civil cases" without violating principles of separation of powers). Courts must refrain from "infringing upon the legislature's province to write and revise the law." *Tully*, 235 N.E.3d at 200 (citing Article 4, Section 1 and *Berry v. Crawford*, 990 N.E.2d 410, 415 (Ind. 2013)).

[41] As our Supreme Court recently explained:

> Generally speaking, laws which establish rights and responsibilities are substantive (the legislative prerogative), and laws which merely prescribe the manner in which such rights and responsibilities may be exercised and enforced are procedural (the judicial prerogative). So under our separation of powers, if a statute is a substantive law, then it supersedes our Trial Rules, but if such statute merely establishes a rule of procedure, then our Trial Rules would supersede the statute.

*Mellowitz v. Ball State Univ.*, 221 N.E.3d 1214, 1221 (Ind. 2023) (internal quotations and citation omitted). Further, the Court observed that courts will "accommodate statutes altering procedures if the statutes predominantly further public policy objectives and do not interfere with the orderly dispatch of judicial business." *Id.* at 1222 (holding that statute prohibiting class actions against universities for contract claims arising from the COVID-19 pandemic predominately furthered public policy objectives and did not usurp judicial power to promulgate procedural rules governing class actions); *see also Church*, 189 N.E.3d at 590 (upholding statute limiting depositions of child sex victims because, despite procedural aspects, it predominantly furthered public policy objectives and was thus substantive).

[42] The City suggests that the Reservation Statute is procedural because "its purpose is to remove a long-adjudicated case from the docket" – "a case that all three levels of Indiana courts have been actively managing for 25 years[.]" *Appellee's Brief* at 45, 46. The City asserts that this amounts to "an extreme legislative intrusion" into the functioning of the judicial branch. *Id.* at 45. We do not agree.

[43] The Reservation Statute is a substantive law that falls squarely within the legislative prerogative to determine public policy. It reconsolidates in the state authority that the legislature had previously delegated to political subdivisions.[9]

---

[9] Ind. Code § 36-1-4-3 grants municipalities the power to sue and be sued; I.C. § 32-30-6-7 allows municipalities to bring public nuisance actions.

We agree with the State that reallocating authority in this way "is a constitutionally permissible exercise of the State's legislative power." *State's Brief* at 21; *see also State's Brief* at 22 ("Defining the rights, powers, and duties of local government units is a core legislative function that does not encroach on the judicial power."). Indeed, political subdivisions are "created as convenient agencies for exercising such of the governmental powers of the state as may be [e]ntrusted to them"; such powers are conferred in "the absolute discretion of the state" and may be modified or withdrawn at the state's pleasure. *Lake Ridge Sch. Corp. v. Holcomb*, 198 N.E.3d 715, 718 (Ind. Ct. App. 2022) (quoting *Hunter v. City of Pittsburgh*, 207 U.S. 161, 178-79 (1907)); *see also Lucas v. Bd. of Comm'rs of Tippecanoe Cnty.*, 44 Ind. 524, 530-31 (1873) ("Being a mere agency of government, it is evident that the municipality cannot itself have that complete and absolute control and power of disposition of its property which is possessed by individuals over their own. For it can hold and own property only for corporate purposes, and these purposes are liable at any time to be so modified by legislation as to render the property no longer available.").

[44] The Reservation Statute reflects a balancing of policy considerations, and to the extent the City thinks the result is unfair, that is an argument for the legislature. *See Mellowitz*, 221 N.E.3d at 1226 ("In determining whether legislation is violative of constitutional restraints the courts will confine themselves to the question, not of legislative policy, but of legislative power."); *Tully*, 235 N.E.3d at 202 ("The legislature's policy choices, so long as they are constitutional, are beyond our purview. We neither applaud the wisdom of such choices nor

condemn their folly. We simply assess their legality.") (quoting *KS&E Sports*, 72 N.E.3d at 907).

### *2.2 Open Courts Clause*

[45] The Open Courts Clause of the Indiana Constitution, Article 1, Section 12, provides: "All courts shall be open; and **every person**, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." (Emphasis added.)

[46] "[T]his clause 'does not prohibit all conditions on access to the courts, but it does prevent the legislature from arbitrarily or unreasonably denying access to the courts.'" *Himsel v. Himsel*, 122 N.E.3d 935, 945-46 (Ind. Ct. App. 2019) (quoting *KS&E Sports*, 72 N.E.3d at 905), *trans. denied*, *cert. denied* (2020). "The legislature has wide latitude in defining the existence and scope of a cause of action and in prescribing the available remedy." *Id*. at 946. "Thus, although there is no right under the Open Courts Clause to any particular cause of action and the legislature may create, modify, or abolish a particular cause of action, to the extent there is an existing cause of action, the courts must be open to entertain it." *Smith v. Indiana Dep't of Corr.*, 883 N.E.2d 802, 810 (Ind. 2008).

[47] The City asserts that as a practical matter the Reservation Statute "makes the judicial system unavailable and inaccessible for a lawsuit that the City has been litigating for 25 years." *Appellee's Brief* at 52. It notes that the statute does not eliminate the underlying substantive cause of action but rather "slams the door

on the City's ability to continue pursuing a remedy for that cause of action." *Id*. at 53. The City acknowledges, however, that it has not found a case in which an Indiana court has applied the Open Courts Clause to a municipality proceeding against the dictates of the state.

[48] As a political subdivision and agent of the state, we hold that the City is not subject to the protections of the Open Courts Clause against infringement by the state. *Cf. Gary 3*, 126 N.E.3d at 826-27 (recognizing that the City is "an agent subject to the control of the State" with no federal due process rights enforceable against the state); *Bd. of Comm'rs of Howard Cnty. v. Kokomo City Plan Comm'n*, 330 N.E.2d 92, 100 (Ind. 1975) ("We conceive [Article 1, Section 1 of the Indiana Constitution] as guaranteeing civil and political rights to all the human inhabitants of the state .... The county has no political or civil rights which this provision would protect against infringement by the state."). Further, we observe that the Reservation Statute does not regulate court access. The statute merely governs the relationship between a state and its political subdivisions and grants the right to bring or maintain such actions to the State.

### 3. The City does not have vested rights in the pending lawsuit that would prevent retroactive application of the Reservation Statute.

[49] Having disposed of the constitutional arguments, we are left with determining whether the City has vested rights in the pending lawsuit. It does not. Leaving aside the City's status as an agent of the state, discussed above, we observe that no final judgment – in fact, no judgment on the substantive merits – has been

entered on the limited claims remaining after *Gary 3*. As this court observed in *Gary 3*:

> [T]here is a well-reasoned line of authority holding that "a party's property right in any cause of action does not vest until a final unreviewable judgment is obtained." *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1141 (9th Cir. 2009) (quoting *Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1086 (9th Cir. 2001)), *cert. denied* (2010). "The reason an accrued cause of action is not a vested property interest ... until it results in a 'final unreviewable judgment,' is that it is inchoate and does not provide a certain expectation in that property interest." *Bowers v. Whitman*, 671 F.3d 905, 914 (9th Cir. 2012) (quoting *Ileto*, 565 F.3d at 1141)[, *cert. denied*]. "In civil litigation, ... no person has an absolute entitlement to the benefit of legal principles that prevailed at the time the case began, or even at the time of the bulk of the litigation. The legislature may change a statute of limitations at the last instant, extending or abrogating the remedy for an established wrong." *Tonya K. by Diane K. v. Bd. of Educ. of City of Chicago*, 847 F.2d 1243, 1247 (7th Cir. 1988). Moreover, it is well settled that "[t]he State remains free to create substantive defenses or immunities for use in adjudication – or to eliminate its statutorily created causes of action altogether[,]" and "the legislative determination provides all the process that is due." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432-33, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).

*Gary 3*, 126 N.E.3d at 826 n.14. In other words, as Defendants put it, the City is not "entitled to have the law as it existed in 1999 (or 2001) frozen in time for the duration of the lawsuit." *Appellants' Reply Brief* at 11.

[50] In fact, the City does not even argue that it has vested rights in this lawsuit. It merely argues for several pages, without citation to authority, that applying the

Reservation Statute under these circumstances would result in a manifest injustice. The following is a portion of the City's argument in this regard:

> [T]he Act only exists because it is the mechanism to substitute for the current plaintiff (for the last 25 years, the City of Gary) a different plaintiff of Defendants' choosing (the Attorney General). The Act was not just designed (as special legislation) to end this lawsuit. It was designed to do so in a particularly dangerous way, by handpicking a new plaintiff, who has stated in the clearest possible terms that he would grant Defendants' wish by not pursuing the claims that the Indiana courts have thrice determined are based on valid theories of liability.

***

> The Indiana judiciary cannot allow the Legislature to substitute, in a longrunning case, a plaintiff of their choosing who has already publicly committed to ending the lawsuit, regardless of how much the Legislature may disapprove of the judiciary's handling of this case over the past 25 years. The trial court, by refusing to apply the Act retroactively to this case and recognizing that the City is the real party in interest, upheld a basic principle of the civil justice system: the Legislature should not be able to effectively pick the winner of individual cases.

> The Act attempts to usurp the judiciary's jurisdiction over a case it is currently managing actively and properly. This case has been heard and considered numerous times at all levels of the Indiana judiciary and has evolved according to the courts' rulings. It has already been determined that the allegations made in the Complaint raise genuine causes of action, and a trial is now needed, after discovery is completed, in order to decide if the facts prove violations of the law.

> Because the Legislature's circumvention would create a manifest injustice, [the trial court] declined to apply the Act to this case. This Court should decline to do so as well.

*Id*. at 55-56, 58-59.

For all the reasons we discussed above, the City has failed to show that retroactive application of the Reservation Statute violates any vested right or constitutional guarantee held by the City. Unfair as it may appear, the legislature can legally do exactly what it did in this case, and we cannot second-guess its public policy determinations in this regard. On remand, the trial court is directed to dismiss this action.

Judgment reversed and remanded.

Pyle, J. and DeBoer, J., concur.

ATTORNEYS FOR APPELLANTS

Terence M. Austgen
Merrillville, Indiana

Kevin E. Steele
Valparaiso, Indiana

James Vogts
Chicago, Illinois

Libby Yin Goodknight
Indianapolis, Indiana

Robert A. Anderson
Crown Point, Indiana

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

James A. Barta
Solicitor General
Indianapolis, Indiana

Katelyn E. Doering
Deputy Attorney General
Indianapolis, Indiana

David C. Jensen
James Hough
Hammond, Indiana

Christoher Renzulli
Scott C. Allan
White Plains, New York

Trevor W. Wells
Merrillville, Indiana

William M. Griffin, III
Little Rock, Arkansas

John E. Hughes
Kimberly P. Peil
Valparaiso, Indiana

Timothy R. Rudd
Dayton, Ohio

Jennifer J. Kalas
Schererville, Indiana

John F. Weeks IV
Atlanta, Georgia

Paul R. Chael
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Irwin B. Levin
Richard E. Shevitz
Gabriel A. Hawkins
Indianapolis, Indiana

Douglas Letter
Washington, DC

Seth M. Lahn
Indianapolis, Indiana

Carla Morgan
Gary, Indiana